UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60358-ALTMAN/Hunt

**KENNETH A. HOROWITZ**,
*as Assignee of Underwater Exploration Company Inc.,*

     *Plaintiff,*

*v.*

**ALLIED MARINE, INC.,** *et al.,*

     *Defendants.*

_____/

### ORDER

     Our Plaintiff, Kenneth Horowitz, bought a yacht from Ferretti Group of America ("FGA") and agreed that, if any problems were to arise with that yacht, his only recourse would be against the yacht's warrantor (our only remaining Defendant), Allied Marine. Allied Marine, in turn, issued Horowitz a Limited Warranty, through which it promised to fix any problems with Horowitz's yacht—so long as Horowitz first brought those problems to Allied Marine's attention. In this lawsuit, Horowitz claims that his yacht was defective and that Allied Marine failed to honor its promise to fix those defects.

     Initially, Horowitz sued FGA, Allied Marine, and their parent company, Ferretti S.p.A (the yacht's manufacturer). After some protracted litigation, Horowitz dismissed his claims against Ferretti S.p.A. and filed an Amended Complaint *solely* against FGA and Allied Marine. *See* Am. Compl. [ECF No. 27]. In that now-operative complaint, Horowitz advanced six claims: three breach-of-warranty claims against Allied Marine (Counts I, IV, and VI); two breach-of-warranty claims against Allied Marine and FGA as "joint venturers" (Counts II and V); and one claim for "revocation of acceptance" against FGA (Count III). *See generally ibid.*

The Defendants filed a Motion to Dismiss the Amended Complaint (the "MTD") [ECF No. 35], which we granted in part and denied in part at a hearing on March 1, 2022. *See* Minute Entry for Motion to Dismiss Hearing (the "MTD Hearing") [ECF No. 84]; *see also* Transcript of Motion Hearing ("MTD Transcript") [ECF No. 87]. In a nutshell, we allowed Horowitz's compensatory-damages claims against Allied Marine to proceed, *see* MTD Transcript at 11:12–22, but we dismissed *both* Horowitz's claims against FGA *and* his claim for consequential and liquidated damages against Allied Marine, *see id.* at 30:21–23. We then memorialized these rulings in a written order—though we inadvertently left out our holding on the issue of consequential and incidental damages. *See generally* MTD Order [ECF No. 85]. The upshot is that, after our MTD Order, Allied Marine was the only defendant left in the case.

Horowitz now asks us to do one of two things: *either* to reconsider our MTD Order *or* to certify a final judgment in FGA's favor under FED. R. CIV. P. 54(b). *See* Plaintiff's Motion for Reconsideration of the Court's March 2, 2022, Order or in the Alternative for Certification Under F.R.C.P. 54(b) and Incorporated Memorandum of Law (the "Motion for Reconsideration") [ECF No. 95]. Horowitz and Allied Marine have now also filed amended motions for partial summary judgment. *See* Plaintiff's Amended Motion for Partial Summary Judgment ("Horowitz's MSJ") [ECF No. 111]; Defendant Allied Marine Inc.'s Amended Motion for Partial Summary Judgment ("Allied Marine's MSJ") [ECF No. 113]. These motions are fully briefed and ripe for adjudication.[1] In this Omnibus Order, we resolve all three of these pending motions.

---

[1] *See* Defendant Allied Marine, Inc.'s Response in Opposition to Plaintiff's Motion for Reconsideration ("Allied Marine's Reconsideration Response") [ECF No. 103]; Plaintiff's Reply to Response to Motion for Reconsideration ("Horowitz's Reconsideration Reply") [ECF No. 108]; *see also* Defendant Allied Marine, Inc.'s Response in Opposition to Plaintiff's Amended Motion for Partial Summary Judgment ("Allied Marine's MSJ Response") [ECF No. 117]; Reply to Defendant's Response to Plaintiff's Amended Motion for Partial Summary Judgment ("Horowitz's MSJ Reply") [ECF No. 121]; Response in Opposition to Defendant's Amended Motion for Partial Summary Judgment ("Horowitz's MSJ Response") [ECF No. 116]; Defendant Allied Marine Inc.'s Reply to Plaintiff's Response to

## THE FACTS[2]

"On February 18, 2020, Mr. Horowitz" executed a "Purchase and Sale Agreement," *see* Allied's Statement of Material Facts in Support of Allied's Amended Motion for Partial Summary Judgment ("Allied Marine's SOF") [ECF No. 114] ¶ 4; Plaintiff's Response to Allied's Statement of Material Facts in Support of Allied's Amended Motion for Partial Summary Judgment ("Horowitz's Response SOF") [ECF No. 115] ¶ 4 ("Undisputed."), for the sale of an expensive[3] "2020 Riva 38-51" Italian yacht, *see* Allied Marine's SOF ¶ 1; Horowitz's Response SOF ¶ 1 ("Uncontested."). Allied Marine's Limited Warranty was appended as Exhibit B to the Purchase and Sale Agreement.[4] *See* Allied Marine's SOF ¶ 5; Horowitz's Response SOF ¶ 5 ("Undisputed."). Neither party genuinely disputes that Horowitz signed the Purchase Agreement and the Limited Warranty. *See* Allied Marine's SOF ¶ 6 ("By signing the [Purchase Agreement] Plaintiff agreed to be bound by the terms of the [Purchase Agreement] and the Limited Warranty."); Horowitz's Response SOF ¶ 6 (disputing only that the Purchase Agreement "does not state the Plaintiff agrees to be 'bound' by the terms of the [Purchase

---

Defendant's Amended Motion for Partial Summary Judgment ("Allied Marine's Reply") [ECF No. 122].

[2] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)).

[3] The "$1,254,000.00" purchase price is undisputed. *See* Plaintiff's Amended Statement of Unopposed Facts in Support of Its Motion for Partial Summary Judgment ("Horowitz's SOF") [ECF No. 112] ¶ 1; Defendant, Allied Marine, Inc.'s Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Allied Marine's Response SOF") [ECF No. 118] ¶ 1 ("Undisputed that the purchase price was $1,254,000.00, plus the applicable sales taxes.").

[4] Horowitz attached to the Amended Complaint *both* the Purchase and Sale Agreement ("Purchase Agreement") *and* the Limited Warranty. *See* Am. Compl. at 49–52 (the Purchase Agreement), 59 (the Limited Warranty).

Agreement] and the Limited Warranty"). The Limited Warranty refers to Allied Marine as the "Warrantor"—but uses Allied Marine's legal name, Ferretti Group USA, and defines it as "FERRETTI" throughout the agreement. *See* Allied Marine's SOF ¶ 12 ("Ferretti Group USA, defined as 'FERRETTI' in the Limited Warranty, is a fictious name for Allied, the Warrantor of the Limited Warranty."); Horowitz's Response SOF ¶ 12 ("Undisputed.").

During the sales process, Horowitz "was represented [ ] by one of the most preeminent attorneys in yacht transactions, Robb Maass, Esq." Allied Marine's SOF ¶ 18; Horowitz's Response SOF ¶ 18 ("Undisputed."). Mr. Maass reviewed the "[closing] documents," *see* Allied Marine's SOF ¶ 19—including an executed "Conditional Acceptance," *id.* ¶ 21—and coordinated a prepurchase survey with "Mr. [Chris] Pliske," *id.* ¶ 22; *see also* Horowitz's Response SOF ¶¶ 19, 21–22 ("Undisputed."). Mr. Pliske spent "5–6 hours" with the yacht on February 24, 2020—during which he conducted a "seal trial"—and "45 minutes" two days later for a "haul out and bottom inspection." Allied Marine's SOF ¶ 26; Horowitz's Response SOF ¶ 26 ("Undisputed.").[5] "Mr. Pliske found that during the sea trial, all of the navigation, electronics, communication and monitoring equipment were tested, observed and found to be in good operating condition unless otherwise noted [in his report]." Allied Marine's SOF ¶ 30; Horowitz's Response SOF ¶ 30 ("Admitted the deposition contains the statement quoted. However[,] Pliske noted issues with the navigation and electronics."). Mr. Pliske also "concluded that but for the listed recommendations, the Yacht was otherwise found to be in excellent condition, had good operating equipment, and would be considered a good marine risk for coastal

---

[5] While Allied Marine's SOF lists these dates as January 24, 2020, and January 26, 2020, respectively, the evidence Allied Marine cites (Mr. Pliske's deposition testimony and his prepurchase report) is clear that this inspection occurred in February, not January, 2020. *See* Deposition of Chris Pliske ("Pliske Dep.") [ECF No. 67-8] 32:16–22 ("Q. So, you mentioned that there was an inspection that took place on February 24th and a haul-out and bottom inspection that was performed on February 26th; is that your recollection? A. Yes, I do remember that now."); *see also* Pliske Marine's Findings and Recommendations ("Pliske Prepurchase Survey") [ECF No. 67-9] at 4 ("These inspections took place on February 24, 2020[,] with a haul out and bottom inspection performed on February 26, 2020.").

and inshore cruising with Bahamian capabilities." Allied Marine's SOF ¶ 31; Horowitz's Response SOF ¶ 31 (failing to genuinely dispute this fact).[6] Mr. Maass then "reviewed Mr. Pliske's survey and did not recall seeing anything that concerned him." Allied Marine's SOF ¶ 35; Horowitz's Response SOF ¶ 35 ("Undisputed[.]"). Mr. Maass thus advised Horowitz to "proceed to closing" and continued representing Horowitz throughout that process. Allied Marine's SOF ¶ 36; Horowitz's Response SOF ¶ 36 ("Undisputed."). The parties closed the transaction on March 18, 2020, and Horowitz signed an "Acceptance of New Vessel." Allied Marine's SOF ¶ 37 (citing the Acceptance of New Vessel, which is appended as Exhibit A to Allied Marine's SOF); Horowitz's Response SOF ¶ 37 ("Undisputed.").

Between February and March 2020—the month after the yacht was delivered—Horowitz claims that he began noticing certain defects with the yacht and that "[t]hese problems were reported to [Allied Marine]." Horowitz's SOF ¶ 6; Allied Marine's Response SOF ¶ 6 ("Disputed that the port engine was overheating at delivery, as it was the engine temperature sensor alarm, and it was suspected that the issue was simply a loose sensor. . . . Undisputed that the analogue [sic] gauges were inoperative at delivery, but disputed that this was an electrical problem, as both gauges were ordered . . . and subsequently replaced.").

Horowitz became so distressed with the yacht's issues that, by May 21, 2020, he "warned" Allied Marine of "litigation if the vessel's defects were not corrected." Horowitz's SOF ¶ 8; Allied

---

[6] In response to this assertion, Horowitz's Response SOF says "Disputed"—but then just recites verbatim paragraph 31 of Allied Marine's SOF. Obviously, that's not sufficient to create a genuine dispute of material fact. *See* FED. R. CIV. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed *must* support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only) admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." (emphasis added)). We may treat as "admitted" any fact a party fails to dispute with proper record evidence. *See* S.D. FLA. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply.").

Marine's Response SOF ¶ 8 ("Undisputed that the communication occurred, albeit on June 18, 2020."). Still unsatisfied by July 10, 2020, Horowitz "requested a replacement boat from [Allied Marine] due to major electrical issues." Horowitz's SOF ¶ 9; Allied Marine's Response SOF ¶ 9 ("Undisputed that the communication occurred. However, the only issues pending at that time were related to component parts excluded under the Limited Warranty and, in any event, were completely resolved by Volvo and Domestic representatives 3 days later on July 13, 2020."). Between July and December 2020, Horowitz and Allied Marine went back and forth trying to resolve the remaining issues Horowitz had identified. *See* Declaration of Kenneth Horowitz ("Horowitz's Decl.") [ECF No. 53-1] ¶ 8a–ii; Declaration of Nicola Rossi ("Rossi's Decl.") [ECF No. 67-2] ¶¶ 27–50. "As of December 22, 2020, the few remaining open warranty items were (1) scratches on the sliding door, (2) a chip on the swim platform, (3) replacement of a push button, (4) a few corroded control switches, (5) engine room gaskets, and (6) investigating water intrusion into cabinets." Allied Marine's SOF ¶ 44 (citing Rossi's Decl. ¶ 51); Horowitz's Response SOF ¶ 44 (not genuinely disputing this fact).[7]

With these items still outstanding, Horowitz "sent a letter on January 1, 2021[,] demanding recission and revocation of acceptance." Allied Marine's SOF ¶ 45 (citing Revocation Letter [ECF No. 35-1]); Horowitz's Response SOF ¶ 45 ("Undisputed that the letter of revocation was sent [on] January 1, 2021."). Horowitz's Revocation Letter "<u>only</u> demand[ed]" that "Ferretti rescind the

---

[7] Here, again, Horowitz says only "Disputed. [ECF 53-1]." *See* Horowitz's Response SOF ¶ 44. But Horowitz cannot genuinely dispute a specific factual assertion by simply citing to his declaration as a whole—which is the document we found when we looked up his citation to "(ECF No. 53-1)." *See* S.D. Fla. L.R. 56.1(b)(1)(B) ("All Statements of Material Facts [whether filed by the movant or by the non-movant] [ ] shall: . . . (B) Consist of separately numbered paragraphs, limited as far as practicable to a single material fact, *with each fact supported by specific, pinpoint references to particular parts of the record material* . . . . When a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (*e.g.*, 'Smith Affidavit' or 'Jones Deposition' or 'Exhibit A') is non-compliant." (emphasis added)); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). And as we've said (*see supra* note 6), we may treat as "admitted" a fact that isn't adequately controverted. *See* S.D. Fla. L.R. 56.1(c) ("All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts[.]").

purchase and accept the return of the vessel for a full refund of the purchase price"; it didn't demand any further repairs. Allied Marine's SOF ¶ 47; Horowitz's Response SOF ¶ 47 ("Admitted that based upon prior failures documented therein, the rescission/revocation of acceptance letter did not demand additional fruitless efforts to repair."). The Revocation Letter, however, also listed "a few of the issues with the new vessel" (both resolved and unresolved). *See* Revocation Letter at 3. Allied Marine's counsel responded to this letter on January 28, 2021, addressing every one of Horowitz's grievances in a chart that mapped out Horowitz's complaints in one column and the status of that complaint in the other (*e.g.*, "fully resolved," "repaired," or "open item"). *See generally* Allied Marine's Response Letter [ECF No. 60-5]; *see also* Allied Marine's SOF ¶ 50 ("On January 2[8], 2021, Defendants' counsel served a Response Letter, outlining the few warranty items that remained pending."); Horowitz's Response SOF ¶ 50 ("Undisputed counsel issued the correspondence dated January 28, 2021."). The chart also included additional details—such as whether the complaint was covered by another manufacturer's warranty. *See generally* Allied Marine's Response Letter.

Still unappeased, Horowitz filed this lawsuit on February 15, 2021. *See* Allied Marine's SOF ¶ 51; Horowitz's Response SOF ¶ 51 ("Undisputed suit was filed."). Horowitz's complaint "alleged many new issues that were never raised under the Warranty and were not mentioned in the Revocation Letter." Allied Marine's SOF ¶ 52; Horowitz's Response SOF ¶ 52 ("Undisputed the Complaint was more extensive than the revocation letter."). Allied Marine thus says that it "w[as] not afforded proper notice and opportunity to cure [these] newly-raised claims." Allied Marine's SOF ¶ 57; Horowitz's Response SOF ¶ 57 (inadequately disputing this fact).[8]

---

[8] Again, Horowitz here says only "Disputed. [ECF No.: 53-1]." For all the reasons we highlighted in note 7, *supra*, that's just not enough to create a genuine dispute of fact.

THE LAW

## I.     Reconsideration

"When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." FED. R. CIV. P. 54(b). "Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"—like our MTD Order—"does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *Ibid.*

"Although Rule 54(b) does not delineate the parameters of a district court's discretion to reconsider interlocutory orders, [the Eleventh Circuit has] indicated that Rule 54(b) takes after Rule 60(b)." *Herman v. Hartford Life and Accident Ins. Co.*, 508 F. App'x 923, 927 n.1 (11th Cir. 2013); *see also id.* at 927–28 ("Reconsideration of [an interlocutory order] is appropriate to correct manifest errors of law or facts, *see* FED. R. CIV. P. 60(b), and we will only reverse a district court's recission of its interlocutory order for abuse of discretion." (cleaned up)). Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud[,] . . . misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." FED. R. CIV. P. 60(b).

But "[r]econsideration of a previous order is an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002) (Gold,

8

J.) (cleaned up). "In order to reconsider a judgment[,] there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* at 1369. "Courts have distilled three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct *clear error or manifest injustice.*" *Benestad v. Johnson & Johnson*, 2022 WL 5239598, at *1 (S.D. Fla. Oct. 4, 2022) (Singhal, J.) (emphasis added & cleaned up). Motions for reconsideration, in other words, "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment. This prohibition includes new arguments that were previously available, but not pressed." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (cleaned up); *see also Procaps S.A. v. Patheon Inc.*, 2014 WL 5786830, at *2 (S.D. Fla. Oct. 2, 2014) (Goodman, Mag. J.) (explaining that reconsideration "is not an opportunity to rethink what the court already thought through—rightly or wrongly" (cleaned up)).

## II.  Partial Summary Judgment

"Partial summary judgment is a disposition of less than the whole action and serves as a useful tool to streamline litigation by establishing certain issues before trial where there is no genuine issue of material fact." *Sec. & Exch. Comm'n v. Bankatlantic Bancorp, Inc.*, 661 F. App'x 629, 630 n.1 (11th Cir. 2016) (citing FED. R. CIV. P. 56(d) advisory committee's note to 1946 amendment); *see also* FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."). "It bears noting," though, "that while partial summary judgment serves as a valuable tool of judicial management that prunes the issues for trial, courts should not overlook possible negative consequences of unfair prejudice and jury confusion. The risk of these potential consequences is especially prevalent when partial summary judgment is granted on a single portion of one claim[.]" *Bankatlantic Bancorp*, 661 F. App'x at 637 n.6.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Keybank Nat'l Ass'n v. Hamrick*, 576 F. App'x 884, 887 (11th Cir. 2014). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Ibid.*

At summary judgment, the movant bears the burden of proving the absence of a genuine issue of material fact—and all factual inferences are drawn in favor of the non-movant. *See, e.g., Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the movant satisfies its initial burden, the burden shifts to the non-movant to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* FED. R. CIV. P. 56(e). The non-movant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, it must come forward with some affirmative evidence to support its claim or defense. *See Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the

non-movant "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (cleaned up).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In other words, we must consider each motion on its own merits, resolving all reasonable inferences *against* the party whose motion is under consideration. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

## ANALYSIS

### I.     The Motion for Reconsideration

We'll start with the Motion for Reconsideration. Horowitz, as we've hinted, asks us to "reconsider [our] prior ruling with respect to dismissal of Counts II, III, and V of the Amended Complaint,"[9] *see* Motion for Reconsideration at 4, and to permit him "to further develop the case at bar with respect to, but not limited to, consequential and incidental damages," *id.* at 19. Horowitz also asks, in the alternative, that we "determine [our] ruling that grants [the MTD] as to Counts II, III, and V of the Amended Complaint is an entry of Final Judgment by expressly determining that there is no just reason for delay and a clear declaration as to entitlement to incidental and consequential damages." *Ibid.*[10]

---

[9] Count II is a claim for "breach of warranty" against FGA and Allied Marine as "joint venturers." *See* Am. Compl. at 35. Count III is the revocation-of-acceptance claim against FGA, *id.* at 38, which Horowitz brought "pursuant to the [Magnuson-Moss Warranty Act], 15 U.S.C. § 2301, *et seq.*," *id.* ¶ 250. And Count V is a claim for "breach of express warranty" against FGA and Allied Marine "as joint venturers." *Id.* at 43.

[10] Horowitz never grounds his request for relief in any specific provision of Rule 60(b). *See generally* Motion for Reconsideration. Instead, relying on out-of-circuit cases, he suggests that some "lower standard" applies. *See id.* at 3 ("However, the Fifth Circuit has held a Rule 54(b) motion to a lower standard than Rule 59(e) or Rule 60 motions." (citing *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)). Two problems here. *One*, our Circuit has said that "Rule 54(b) takes after Rule 60(b)."

After careful review, we decline to "reinstate" Counts II, III, and V of the Amended Complaint for the same reasons we gave at the MTD Hearing. We also deny Horowitz's request that we certify our decision as a final judgment because (as we're about to explain) we're soon headed to trial in this case—and we'd like to avoid, as much as possible, piecemeal appeals. *See Vann v. Citicorp Sav. of Ill.*, 891 F.2d 1507, 1509–10 (11th Cir. 1990) ("The purpose of this rule is to codify the historic practice of prohibiting piecemeal disposition of litigation and permitting appeals only from final judgments except in the infrequent harsh case where the district court makes the certification contemplated by the rule." (cleaned up)). We *will*, however, reconsider our decision to preclude Horowitz from pursuing incidental and consequential damages in his still-pending claims against Allied Marine.

### A. Counts II, III, and V of the Amended Complaint

We dismissed Counts II, III, and V of the Amended Complaint because—under the express terms of *both* the Purchase Agreement *and* the Limited Warranty—FGA unambiguously disclaimed all liability and damages. *See* MTD Transcript at 18:16–19 ("But, as I'll explain, I find that the disclaimers in the Purchase Agreement and Limited Warranty are valid and that they make crystal clear that FGA, as the seller of the yacht, has disclaimed all liability and damages."). On this point, the language of the Purchase Agreement—which we quoted during the MTD Hearing, *see id.* at 13:9–15—couldn't be clearer:

---

*Herman*, 508 F. App'x at 927 n.1. Because *Herman* is persuasive authority, *see* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."), we'll follow our Circuit's pronouncements and apply Rule 60(b) here. *Two*, although Horowitz doesn't explicitly invoke Rule 60(b), we'll construe his Motion for Reconsideration as a motion under Rule 60(b)(1) because he plainly thinks we made several mistakes in our MTD Order. *See Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839–40 (11th Cir. 1982) ("Rule 60(b)(1) authorizes a court to grant relief from judgments for mistake, inadvertence, surprise, or excusable neglect. The mistakes of judges may be remedied under this provision." (cleaned up)); *see also Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) ("Thus, as currently written, 'mistake' in Rule 60(b)(1) includes legal errors made by judges.").

**THE WARRANTY ON THIS YACHT IS GIVEN SOLELY BY THE MANUFACTURER**[11] . . . . (c) FGA DOES NOT PROVIDE ANY WARRANTIES AS THE WARRANTIES OF [ALLIED MARINE] AND SUPPLIERS ARE THE SOLE AND EXCLUSIVE WARRANTIES, EITHER EXPRESS OR IMPLIED . . . . (i) IN NO EVENT WILL FGA BE LIABLE TO BUYER FOR ANY DAMAGE ARISING FROM BUYER'S PURCHASE AND USE OF SAID YACHT, INCLUDING, WITHOUT LIMITATION, INCIDENTAL AND CONSEQUENTIAL DAMAGES; (j) BUYER'S SOLE AND EXCLUSIVE REMEDY FOR ANY CLAIMS ARISING FROM A DEFECT IN THE YACHT OR ITS COMPONENTS SHALL BE PURSUANT TO THE TERMS AND CONDITIONS OF THE APPLICABLE PUBLISHED WARRANTIES.

Purchase Agreement ¶ 9.

The Limited Warranty likewise makes plain—in its very first sentence—that Allied Marine is the *sole warrantor* of Horowitz's yacht. *See* Limited Warranty ("***The Limited Warranty***. [Allied Marine] warrants, subject to the limitations and exclusions below, to the first retail purchaser ('First Owner') of this yacht[.]" (emphasis in original)). And, as FGA did in the Purchase Agreement, Allied Marine (in the Limited Warranty) *conspicuously* disclaimed all express and implied warranties—along with any liability for incidental and consequential damages:

---

[11] We note here that, in the section of the Purchase Agreement describing Allied Marine as the sole warrantor, the heading erroneously that "**THE WARRANTY ON THIS YACHT IS GIVEN SOLELY BY THE MANUFACTURER.**" Purchase Agreement ¶ 9 (emphasis in original). We know that this heading is wrong because the rest of this section *and* the Limited Warranty make clear that the warranty is solely Allied Marine's. *See id.* ¶ 9(b) ("THE YACHT IS BEING WARRANTED SOLELY BY [ALLIED MARINE], A SEPARATE LEGAL ENTITY[.]"); *see also* Limited Warranty at 59 ("***The Limited Warranty***. [Allied Marine] warrants, subject to the limitations and exclusions below, to the first retail purchaser ('First Owner') of this yacht[.]" (emphasis in original)). And, by the express terms of the Purchase Agreement, the text of the specific sections controls over any inconsistent statements in the headings. *See* Purchase Agreement ¶ 15(j) ("The headings herein are for convenience of reference only and will not be deemed to be part of the substance of this Agreement."); *see also Cruz v. Green*, 2019 WL 2743211, at *3 (S.D. Fla. July 1, 2019) (Altman, J.) ("Where 'contractual provisions conflict, but significantly, the contract itself provides means for reconciling the conflict, [the Court] is obliged to apply the contract's internal conflict-resolution mechanism.'" (quoting *Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018)). And, of course, this rule—that a title or heading cannot override the plain words of a text—is a standard canon of textualist interpretation. *See* SCALIA & GARNER 222 ("[A] title or heading should never be allowed to override the plain words of the text.").

***Other Limitations***. [ALLIED MARINE] GIVES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, ON THIS YACHT AND DISCLAIMS: (1) ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, AS WELL AS ANY CONTRACTS OR REPRESENTATIONS BY ANY PARTY RESPECTING THIS YACHT, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE (TO THE EXTENT SUCH CANNOT BE DISCLAIMED, THEY ARE LIMITED TO THE DURATION OF APPLICABLE EXPRESS LIMITED WARRANTIES HEREIN); (2) ANY LIABILITY FOR ECONOMIC LOSS ARISING FROM CLAIMS OF DEFECTS, PRODUCT FAILURE, NEGLIGENCE, DEFECTIVE DESIGN, FAILURE TO WARN OR INSTRUCT, LACK OF SEAWORTHINESS, AND ANY OTHER THEORY OF LIABILITY; AND (3) ANY LIABILITY FOR: INDIRECT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, COSTS OR EXPENSES, INCLUDING BUT NOT LIMITED TO . . . RESCISSION OR REVOCATION OF AC[C]EPTANCE.

*Ibid.*

Horowitz tried to circumvent these unambiguous provisions of the Purchase Agreement and the Limited Warranty in his Response to the Defendants' Motion to Dismiss [ECF No. 35]. He argued there that FGA's disclaimer of liability and damages was ineffective because (1) it was unconscionable under FLA. STAT. § 672.302, and (2) the Limited Warranty failed of its essential purpose under FLA. STAT. § 672.719. *See* MTD Transcript at 16:25–17:14. Horowitz also contended that—because of the Amended Complaint's allegations about the relationship between FGA, Allied Marine, and Ferretti S.p.A—he should be permitted to sue FGA and Allied Marine as "joint venturers," *see id.* at 17:16–20, notwithstanding the fact that, per the Purchase Agreement, FGA and Allied Marine are plainly separate entities, *see* Purchase Agreement ¶ 9(b) ("THE YACHT IS BEING WARRANTED SOLELY BY [ALLIED MARINE], A SEPARATE LEGAL ENTITY[.]"). We rejected all these arguments when we ruled on the MTD. *See* MTD Transcript at 18:20–31:13.

Horowitz now largely (and impermissibly) recycles his MTD arguments here. Motions for reconsideration, as we've said, "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Wilchombe*, 555 F.3d at 957.

Nevertheless—and in the interest of completeness—we've taken the time in this Order to reiterate why we were right in the first place.

    **1.** **Horowitz failed to plead, in any viable way, that FGA's disclaimer of liability and damages is unconscionable under FLA. STAT. § 672.302.**

*First*, we reaffirm our conclusion that Horowitz "hasn't demonstrated that the disclaimers in the Purchase Agreement or the Limited Warranty are unconscionable under Florida Statute Section 672.302." MTD Transcript at 18:20–23 (cleaned up). At the MTD Hearing, we explained that Florida law required Horowitz to allege *both* "procedural and substantive unconscionability . . . as determined at the time the contract was made." *Id.* at 18:24–19:2; *see also id.* at 19:3–7 ("Both procedural unconscionability and substantive unconscionability must exist before the provision is unenforceable." (quoting *Golden v. Mobil Oil Corp.*, 882 F.3d 490, 493 (11th Cir. 1989)). We then defined both types of unconscionability: Procedural unconscionability "relates to the manner in which the contract was entered and involves such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms," *id.* at 19:12–17 (quoting *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727–28 (Fla. 4th DCA 2003)), while substantive unconscionability "focuses on the actual agreement and whether the terms are unfair," *id.* at 19:18–19 (quoting *Robinson*, 855 So. 2d at 728). Horowitz's problem, as we explained, is that he didn't "make any allegations as to why the Purchase Agreement or the Limited Warranty were procedurally or substantively unconscionable." *Id.* at 20:13–15.

Horowitz doesn't suggest that we misstated the elements of an unconscionability claim under Florida law. *See generally* Motion for Reconsideration. Nor does he identify any allegations of unconscionability that we might've missed in the Amended Complaint. Instead, he makes the entirely irrelevant point that the decisions we cited during the MTD Hearing—including *Golden*, *Robinson*, and others—were decided *after* the pleadings in those cases had closed. *See id.* at 8–12. But courts routinely cast aside deficient allegations of unconscionability on a motion to dismiss—as we have here. *See, e.g.*,

*Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *3 (S.D. Fla. Dec. 5, 2013) (Cohn, J.) ("The Court also rejects Plaintiffs' contention that the durational limits on the Jetta's express warranty are unconscionable . . . . Plaintiffs . . . do not contend that the warranty was substantively unconscionable, nor have they sufficiently pled procedural unconscionability."); *Wilson v. Volkswagen Grp. of Am., Inc.*, 2018 WL4623539, at *5 (S.D. Fla. Sept. 26, 2018) (Scola, J.) ("The Court agrees that broad allegations of procedural unconscionability, stating simply that there was unequal bargaining power and there was lack of meaningful choice relating to the limitations on the warranties are insufficient to survive a motion to dismiss . . . . Because the Plaintiffs do not point to anything other than their allegation of unequal bargaining power between the parties, they have failed [to] show that they have properly pleaded procedural unconscionability." (cleaned up)); *Marquez v. Amazon.com., Inc.*, 2021 WL 6060670, at *3 (S.D. Fla. Nov. 18, 2021) (Middlebrooks, J.) (rejecting an unconscionability argument at the pleadings stage where the plaintiff failed to allege facts demonstrating procedural and substantive unconscionability, as required under Washington law).

In sum, Horowitz has failed to identify a "clear error or manifest injustice," *Benestad*, 2022 WL 5239598, at *1, in our decision to reject his claim that FGA's disclaimer of liability and damages was unconscionable under Florida law.

### 2. Horowitz cannot revoke acceptance even if the Limited Warranty failed of its essential purpose under FLA. STAT. § 672.319.

*Second*, we reiterate that, "because FGA validly disclaimed all warranties[,] . . . [Horowitz] cannot sue for revocation of acceptance under Florida Statute Section 672.608." MTD Transcript at 24:15–17. We premised this aspect of our holding on a controlling Florida case that neither party had cited in the MTD briefing: *Frank Griffin Volkswagen, Inc. v. Smith*, 610 So. 2d 597 (Fla. 1st DCA 1992). *See* MTD Transcript at 24:21–25. In *Frank Griffin*, Florida's First DCA explained that, when a seller "disclaim[s] all warranties, express or implied, and the only remedy available . . . was that of the manufacturer . . . that does not render the goods nonconforming under the consumer's contract with

the [seller], absent a warranty of merchantability." 610 So. 2d at 602 (cleaned up) (rejecting a defective

automobile purchaser's contention that he could revoke acceptance of the vehicle from a seller who'd

validly disclaimed all warranties, under FLA. STAT. § 672.608, simply because the automobile

*manufacturer's* limited warranty allegedly failed of its essential purpose under FLA. STAT. § 672.719).

Horowitz doesn't dispute our interpretation of *Frank Griffin*; in fact, he describes our

summation as "well considered[.]" Motion for Reconsideration at 15. Rather, he contends that *Frank

Griffin* "was inappropriate to apply at this stage of the proceedings." *Ibid.* But Horowitz never explains

why that is. He, instead, claims—without any citations—that the case "will be inapplicable based upon

a finder of fact's determination as to the interrelationship between FGA and Allied Marine." *Ibid.*

Having thus failed to invoke any proper legal authority for his position, Horowitz has waived any

argument he might've had on this issue. *See, e.g.*, *United States v. Esformes*, 60 F.4th 621, 635 (11th Cir.

2023) ("'We have long held that an appellant abandons a claim when he either makes only passing

references to it or raises it in a perfunctory manner without supporting arguments and authority.'"

(quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))).

Waiver aside, *Frank Griffin* plainly applies on a motion to dismiss. The holding of that case,

after all, was predicated on the seller's unequivocal disclaimer of warranties *in the contract. See Frank

Griffin*, 610 So. 2d at 602 (rejecting the consumer's revocation-of-acceptance claim because "[the seller]

disclaimed all warranties, express or implied, and the only remedy available . . . was that of the

manufacturer"). And, "[u]nder Florida law, the interpretation of contracts is a question of law if the

contractual language is clear and unambiguous." *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1066

(11th Cir. 2004); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional

contract-interpretation principles make contract interpretation a question of law, decided by reading

the words of a contract in the context of the entire contract and construing the contract to effectuate

the parties' intent." (cleaned up)). It's thus unsurprising that *both* Florida *and* federal courts have relied

on *Frank Griffin* to dismiss revocation-of-acceptance claims where—as here—the seller has unambiguously disclaimed all warranties in the contract. *See, e.g.*, *Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273, 1275–76 (Fla. 4th DCA 2003) ("Signature Combs argues that the buyers were not entitled to revocation because the sales agreement provides that the aircraft was sold 'as is' and that all warranties were disclaimed by Signature Combs. It relies on *Frank Griffin Volkswagen, Inc. v. Smith*, 610 So. 2d 597 (Fla. 1st DCA 1992) . . . . We agree with *Frank Griffin* and find it indistinguishable from the present case in any manner which would benefit the Giallos."); *Drew v. Boaters Landing Inc. of Fort Myers*, 2007 WL 2700987, at \*3 (M.D. Fla. Sept. 13, 2007) (Steele, J.) (relying on *Frank Griffin* in holding that, because the seller had disclaimed all warranties, "revocation of acceptance is not available to plaintiffs in this case, and the Motion to Dismiss is granted as to Count III").

For all these reasons, then, we decline to reconsider our dismissal of Horowitz's revocation-of-acceptance claim in Count III.[12]

### 3. Horowitz's joint-venture theory doesn't allow him to sue FGA for breach of warranty.

*Third*, as we explained at the MTD Hearing, Horowitz's breach-of-warranty claims against FGA (Counts II and V) fail because his "joint venture theory isn't viable." MTD Transcript at 27:18–19.

---

[12] One last comment on this. Horowitz contends that "[t]here is no waiver to the right of revocation in the [Purchase Agreement]. That language is only contained in the warranty." Motion for Reconsideration at 19. He further speculates that "the Court's determination would have been different had the Court considered that the relevant language was only contained in the warranty." *Ibid.* It's true that the revocation-of-acceptance waiver comes from the Limited Warranty. It's also true, though, that we *must* consider that document *together with* the Purchase Agreement. *See Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645, 648 (11th Cir. 1992) ("Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract."). In any event, it's *FGA's* disclaimer—which *is* in the Purchase Agreement—that matters here. *See* Purchase Agreement ¶ 9.

As an initial matter—and as we've explained once before—Horowitz's joint-venture theory "falls apart on its own terms because [his] allegations portray FGA and Allied Marine as subsidiaries of Ferretti, which the plaintiff voluntarily dismissed in this case, and not as joint venturers or agents of one another." *Id.* at 30:9–16. And, as we observed at the MTD Hearing, "[e]ven if we were to accept that the two defendants, FGA and Allied Marine, were joint venturers, that wouldn't do anything to override the plain text of the Limited Warranty [and] the Purchase Agreement, which, again, made clear that [Horowitz] can't sue FGA[;] [he] can only sue Allied Marine." *Id.* at 27:21–25. We clarified, in other words, "that the question of whether there's a joint venture is totally irrelevant to the separate question of whether FGA allowed itself to be sued, and whether Mr. Horowitz disclaimed any right to sue FGA in the Purchase Agreement." *Id.* at 29:22–30:4.

Nothing Horowitz has said in his Motion for Reconsideration changes our analysis in any way. He cites the same inapposite cases as before—most of which are slip-and-fall lawsuits in which individual plaintiffs leveraged agency theories as a means of suing cruise companies *in tort* for the injuries they sustained at the hands of the cruise companies' independent contractors. *See* Motion for Reconsideration at 15–17. At the MTD Hearing, we distinguished those cases on the obvious ground that, "[i]n this case, we have breach-of-contract claims, and so the plain language of the Purchase Agreement controls as a direct manifestation of [the] intent of the parties." MTD Transcript at 29:15–17. To be fair, though, Horowitz does raise one new argument: "The existence of an agency or joint venture relationship," he says, "between FGA and Allied could render FGA a co-warrantor, thereby entitling plaintiff to all remedies, including revocation of acceptance as the warranty of merchantability would apply." Motion for Reconsideration at 17. But *Frank Griffin* shuts the door on this "co-warrantor" theory, too, because FGA (as we've highlighted) disclaimed *all warranties* and only presented the Limited Warranty when Horowitz purchased the yacht. As the *Frank Griffin* Court explained:

> Where a dealer has properly disclaimed all warranties, the delivering, presenting, or explaining of a manufacturer's warranty, without more, does not render the dealer a

co-warrantor by adoption, nor does it create a contractual obligation which can serve as a basis for a buyer's later revocation of acceptance. Should we hold otherwise, an automobile dealer would effectively be precluded from disclaiming responsibility for the warranties of the manufacturer, despite the fact that section 672.316, Florida Statutes, authorizes a dealer to do so.

*Frank Griffin*, 610 So. 2d at 599 (cleaned up).[13]

The bottom line is this: Horowitz *agreed* that his only recourse—for any problems that might arise with his yacht—would be against *Allied Marine*. He thus cannot now revoke acceptance of the yacht from *FGA* or sue it for breach of warranty. We, therefore, properly dismissed Counts II, III, and V of the Amended Complaint. And, given the "historic federal policy against piecemeal appeals," we exercise our discretion and decline Horowitz's invitation to certify judgment in FGA's favor on those claims. *See Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 778 (11th Cir. 2007) ("The district court must act as a dispatcher and exercise its discretion in certifying partial judgments in consideration of judicial administrative interests—including the historic federal policy against piecemeal appeals—and the equities involved." (cleaned up)). Horowitz doesn't even suggest that he would suffer any prejudice by having to wait until *after* his trial against Allied Marine to appeal the whole case. *See generally* Motion for Reconsideration. And it's not our place to make arguments for him. *See Cosgun v. Seabourn Cruise Line Ltd. Inc.*, 2023 WL 2660243, at *2 (S.D. Fla. Mar. 28, 2023) (Altman, J.) ("It's typically not our role to make the parties' arguments for them."); *see also United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) ("[I]t is inappropriate for a court to raise an issue *sua sponte* in most situations."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012)

---

[13] As we noted at the MTD Hearing, because "the [disclaimer] language [was] written in bold face or capital letters," MTD Transcript at 15:10–11, FGA and Allied Marine properly disclaimed all warranties as to FGA, *see* FLA. STAT. § 672.316(2) (explaining that, "to exclude or modify the implied warranty of merchantability or any part of it, the language must mention merchantability and in case of a writing must be conspicuous; and, to exclude or modify any implied warranty of fitness, the exclusion must be by a writing and conspicuous"); *see also Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 401 (E.D. La. Nov. 9, 1998) (applying Florida law and determining that "boldface captions, in all capital letters, expressly limiting warranties, are conspicuous" (citing *Monsanto Agricultural Prods. Co. v. Edenfield*, 426 So. 2d 674, 578 (Fla. 1st DCA 1982))).

("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited].").

### B.      Incidental and Consequential Damages

We will, however, reconsider our decision to dismiss Horowitz's claim for incidental and consequential damages against Allied Marine. At the MTD Hearing, we concluded that, "[Horowitz] [wasn't] entitled to any consequential or incidental damages under any plain reading of the [P]urchase [A]greement and the [L]imited [W]arranty." MTD Transcript at 22:8–18. In support of this view, we quoted FLA. STAT. § 672.719(3), which provides as follows:

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damage where the loss is commercial is not.

But Horowitz is right to argue—as he does in his Motion for Reconsideration—that, when a plaintiff alleges that a limited remedy fails of its essential purpose, then other remedies (including incidental and consequential damages) may become available. *See* FLA. STAT. § 672.719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code."); *see also Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983) ("[FLA. STAT. § 672.719] allows limitation of remedy, but if the remedy fails of its essential purpose, then other remedies, including consequential damages, are available."). To avail himself of these alternative remedies, Horowitz needed only to "make some allegations of fact, that if taken as true, suggest that [his] limited remedies were inadequate and failed of their essential purpose." *Pinellas Suncoast Transit Auth. v. Mincom, Inc.*, 2007 WL 1222595, at *4 (M.D. Fla. Apr. 24, 2007) (Kovachevich, J.). That's because "[w]hether a warranty fails of its essential purpose is a fact question." *Barnext Offshore Ltd. v. Ferretti Grp. USA, Inc.*, 2011 WL 13223746, at *10 (S.D. Fla. May 16, 2011) (Altonaga, J.) (cleaned up). And Horowitz *did* include several allegations to that effect in his Amended Complaint. *See, e.g.*,

Am. Compl. ¶ 201 ("The [Allied Marine] Warranty fails at its essential purpose as the safety defects are not repairable."); *id.* ¶ 221 ("Florida Statute § 672.719(2) provides[:] 'Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Code.'"); *id.* ¶ 223 ("Failure of the Warranty to meet its essential purpose because of the Warrantor's failure or inability to repair the RIVA provides Plaintiff with the general remedy under the UCC which includes Refund or Revocation of Acceptance."); *id.* ¶ 224 ("The exclusive remedy under the [Allied Marine] Warranty of repair or replace fails in its essential purpose because the repair or replacement of only certain items does not satisfy the purpose of rectifying defects of the subject vessel under the circumstances of this case where the entire vessel is effectively rendered defective, unreliable, unmerchantable, nonconforming, unfit, unseaworthy, dangerous and unrepairable.").

\*        \*        \*

In short, our conclusion that Horowitz cannot pursue incidental and consequential damages from Allied Marine was premature. If Horowitz ultimately prevails on his claims against Allied Marine—and if he demonstrates that the Limited Warranty failed of its essential purpose—then he may seek incidental and consequential damages from Allied Marine. The Motion for Reconsideration is thus **GRANTED in part** and **DENIED in part** as set forth in this Order.

## II.     The Motions for Partial Summary Judgment

The parties' motions for partial summary judgment are somewhat more straightforward. Because Horowitz's MSJ invokes genuine issues of material fact, we **DENY** it in full. *See, e.g.*, *Griffis v. Delta Fam.-Care Disability*, 723 F.2d 822, 823–24 (11th Cir. 1984) ("A party who moves for summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case[.] If the record presents factual issues, the court must deny the motion and proceed to trial."). Allied Marine, on the other hand, asks for summary judgment on four issues. For the reasons we outline below, we **GRANT** its motion as to some of these and leave the rest for trial.

### A.  Horowitz's Motion for Partial Summary Judgment

Horowitz "seeks judgment . . . as to Count VI of the Amended Complaint (Breach of Implied Warranty of Merchantability)." Horowitz's MSJ at 1. But, because there remain genuine disputes on the question of whether the implied warranty was breached, we **DENY** Horowitz's motion.[14]

Horowitz has brought Count VI under the Magnuson-Moss Warranty Act ("MMWA"). *See* Am. Compl. ¶ 1 ("This is an action for breach of express and implied warranties pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et al[.]"). But "implied warranty claims under the MMWA are governed by state law." *Vision Power, LLC v. Midnight Express Power Boats, Inc.*, 2019 WL 5291042, at *3 (S.D. Fla. July 26, 2019) (Seltzer, Mag. J.); *see also id.* at *2 ("The term 'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." (quoting 15 U.S.C. § 2301(7)). The parties agree that Florida law applies here. *See generally* Horowitz's MSJ; Allied Marine's MSJ Response. They also agree that, in the circumstances of our case, an implied warranty of merchantability *exists* under Florida law. *See* Stipulation [ECF No. 21] at 2 ("Allied Marine agrees to the *existence* of the implied warranty of merchantability during the relevant dates of this action[.]").

Under Florida law, "[a] claim for breach of the implied warranty of merchantability requires proof that: (1) the plaintiff was a foreseeable user of the product; (2) the plaintiff used the product in the intended manner at the time of injury; (3) the product was defective when the warrantor transferred it to the plaintiff; and (4) the defect caused the plaintiff's injuries." *A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1353 (S.D. Fla. 2021) (Altman, J.). Horowitz contends that the only "question before this Court" is "whether the warranty was breached." Horowitz's MSJ at 10. In Horowitz's view, the yacht is "unmerchantable" because it "fails to comply with all of the standards

---

[14] On April 5, 2023, Allied Marine "confirm[ed] that it *is* the warrantor of the implied warranty of merchantability for [the] Plaintiff's vessel[.]" Allied Marine's Notice of Clarification Regarding the Hearing on March 28, 2023 [ECF No. 141] (emphasis added).

articulated in Fla. Stat. § 672.314(2)." *Ibid.* That section of the Florida Statutes provides as follows:

1) Unless excluded or modified (s. 672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

2) Goods to be merchantable must be at least such as:

    a. Pass without objection in the trade under the contract description; and
    b. In the case of fungible goods, are of fair average quality within the description; and
    c. Are fit for the ordinary purposes for which such goods are used; and
    d. Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
    e. Are adequately contained, packaged, and labeled as the agreement may require; and
    f. Conform to the promises or affirmations of fact made on the container or label if any.

FLA. STAT. § 672.314; *see also Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1099 (11th Cir. 1983) ("In order to be merchantable under Florida law, Fla. Stat. Ann. § 672.314, the [goods in question] must have passed without objection in the trade under the contract description, be of fair average quality, and be fit for the ordinary purposes for which such goods are used."). Horowitz says that the yacht fails two of these standards because (1) it wasn't "fit for [the] ordinary purposes for which such goods are used," and (2) it doesn't "conform[ ] to the promises or affirmations of fact made on the container or label." Horowitz's MSJ at 11. But both of these questions raise genuine issues of material fact that should be explored at trial.

*First*, while the parties agree that the yacht's "ordinary purpose" was "safely cruising with family and friends," Horowitz's SOF ¶ 4; Allied Marine's Response SOF ¶ 4 ("Undisputed that the general purpose of the Yacht is for safe cruising."), Allied Marine disputes Horowitz's contention that the "defects in the boat render the RIVA unsafe and incapable of being operated safely and reliably to cruise with Plaintiff's friends and family," Horowitz's MSJ at 12; *see also ibid.* ("The defects in the boat render the RIVA unsafe and incapable of being operated safely and reliably to cruise with his family." (citing Horowitz's SOF ¶ 37 & Horowitz's Decl. ¶ 33)); *but see* Allied Marine's Response SOF

¶ 37 (marking this assertion as "Disputed" and cross-referencing Allied Marine's Response SOF ¶¶ 18, 33(a), 34(e)). And the evidence Allied Marine cites in disputing this assertion is plainly sufficient to create a genuine dispute of material fact for trial. *Compare* Horowitz's SOF ¶ 18 ("During Plaintiff's ownership, every attempt to use the boat for cruising failed due to an electrical, mechanical, or operational defect." (citing Horowitz's Decl. ¶ 29)), *with* Allied Marine's Response SOF ¶ 18 ("Disputed that the boat has major electrical, mechanical, or operational defects, as all issues identified by Defendants' experts can be repaired at the minimal cost of $10k-$15k (about 1% of the purchase price). No major electrical, mechanical, or operational defects were observed during the Joint Inspection, which included a sea trial." (first citing Ferrando Report [ECF No. 67-3] at 16; then citing Herbert Report [ECF No. 67-6] at 27; then citing Rossi's Decl. [ECF No. 67-2] ¶¶ 59–61; and then citing Herbert Report at 6–8)); *compare also* Horowitz's SOF ¶ 33(a) ("Roland[o] Santos, a licensed Marine Engineer and certified Marine Surveyor, present at the Joint Inspection, determined: (a) The Riva was not properly built and is not in full compliance with the RINA & ISO rules & standards. The boat has serious flaws that endanger the safety of its occupants and operators." (citing Rolando Santos's Report [ECF No. 55-1] at 1)), *with* Allied Marine's Response SOF ¶ 33(a) ("Undisputed that Roland[o] Santos was present at the Joint Inspection. (a) Disputed. Roland[o] Santos['s] conclusions are challenged by Defendants' experts, Federico Ferrando, Michael Monahan, Dan Arnold." (first quoting Ferrando Report at 17 ("Considering the easy modifications that can address the conclusions from Rimkus and Alpha Marine Reports, it is the opinion of the undersigned Marine Surveyor that condemning the Yacht as unsafe is an overstatement."); then quoting Monahan Report Dated Nov. 17, 2020 ("Monahan Report") [ECF No. 67-4] at 4 ("[N]one of the claimant reported items are deemed to render the vessel unfit for service after rectification of potential warranty items."); and then quoting Arnold Report [ECF No. 67-5] at 8 ("The fixed fire suppression system issues identified in the Rimkus Report appear valid and, in my opinion, are easily curable."))); *and then compare* Horowitz's

SOF ¶ 34(e) ("The electrical system has not been installed in a safe and reliable manner. The vessel would not be safe to operate by a typical American recreational boater while in its present condition."), *with* Allied Marine's Response SOF ¶ 34(e) ("Disputed, as there is no citation to the record. Disputed that the electrical system was not installed in a safe and reliable manner or that the boat is not safe to operate." (citing Herbert Report at 8 ("The identified deficiencies do not render the vessel unseaworthy and/or unsafe after correction of the deficiencies through the vessel warranty."))).

Still resisting, Horowitz claims that, according to Allied Marine's "own experts," the "vessel is unseaworthy." Horowitz's MSJ at 12 (citing Horowitz's SOF ¶¶ 35–36). In saying so, however, Horowitz cites only two paragraphs of *his own* SOF—in each of which he cites only a paragraph of *his own* declaration. In paragraph 35 of his SOF, for example, Horowitz points us to paragraph 27 of his declaration, which says: "Mr. Monahan, a Naval Architect, filed an expert report on behalf of the Defendants in this action. In his conclusions, Mr. Monahan confirms the boat is currently unseaworthy and unfit for service." And paragraph 36 of his SOF similarly refers us to paragraph 28 of his declaration, which states: "Mr. Daniel Arnold, a Fire Engineer, filed an expert report on behalf of Defendants in which he agreed the fixed fire suppression system issues identified in the Hains expert report appeared valid." That's a far cry from the kind of dispositive evidence we would need to see in order to enter judgment in Horowitz's favor.

The problem isn't so much that Horowitz is offering us only self-serving declarations—that's fine. *See, e.g.*, *MY. P.I.I. LLC v. H&R Marine Eng'g, Inc.*, 544 F. Supp. 3d 1334, 1344 (S.D. Fla. 2021) (Altman, J.) ("A non-conclusory affidavit which complies with Rule 56 can create a genuine dispute concerning an issue of material fact, even if it is self-serving and/or uncorroborated." (quoting *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (cleaned up))). The problem (rather) is that, in these paragraphs, Horowitz completely misconstrues the opinions of Allied Marine's experts. Those experts, in fact, never conceded (as Horowitz suggests) that the vessel is unseaworthy. *See, e.g.*,

Allied Marine's Response SOF ¶ 35 ("Undisputed that Michael Monahan is a naval architect that filed an expert report on behalf of the Defendants. Disputed that Mr. Monahan concluded that the boat is unseaworthy. '[N]one of the claimant[-]reported items are deemed to render the vessel unfit for service after rectification of potential warranty items.'" (quoting Monahan Report at 4)); *id.* ¶ 36 ("Undisputed that Daniel Arnold is a fire protection engineer that filed an expert report on behalf of the Defendants. Undisputed that Mr. Arnold concluded that the bulkheads should be sealed and labels applied, which are 'easily curable.'" (quoting Arnold Report at 8)). On the contrary, Allied Marine's witnesses have uniformly resisted Horowitz's claims that the yacht is unseaworthy or unsafe. *See, e.g.*, Ferrando Report at 17 ("Considering the easy modifications that can address the conclusions from Rimkus and Alpha Marine Reports, it is the opinion of the undersigned Marine Surveyor that condemning the Yacht as unsafe is an overstatement."); Monahan Report at 4 ("[N]one of the claimant[-]reported items are deemed to render the Vessel unfit for service after rectification of potential warranty items."); Arnold Report at 6 ("[I]t is my opinion that the fixed fire suppression system deficiencies identified are easily curable."); Herbert Report at 8 ("The identified deficiencies do not render the vessel unseaworthy and/or unsafe after correction of the deficiencies through the vessel warranty."); *see also* Allied Marine's MSJ at 11 ("Mr. Pliske [who conducted the pre-purchase inspection for Horowitz] did not observe anything that rendered the Yacht unseaworthy or dangerous[.]" (citing the Deposition of Christopher Pliske ("Pliske Dep.") [ECF No. 67-8] at 65:2–7)).

Undeterred, Horowitz points out that "Pliske testified there were safety violations he did not point out in his report such as the absence of a carbon monoxide detector or a single station smoke alarm." Plaintiff's Reply Statement of Material Facts ("Horowitz's Reply SOF") [ECF No. 124] ¶ 82 (citing Pliske Dep. 78:1–79:11). But Pliske *specifically* opined that the vessel *is* safe. Here's the relevant colloquy from his deposition:

Q: Did you see anything on your survey that rendered the boat un-seaworthy?

> A: No.
>
> Q: Other than the safety items that you denote in your report, did you see anything else that rendered the boat unsafe?
>
> A: No.
>
> Q: Anything dangerous?
>
> A: No.

Pliske Dep. at 64:24–65:7.[15] And, in any event, we wouldn't grant summary judgment because of a supposed conflict between Pliske's opinions and the opinions of Allied Marine's experts (Monahan, Arnold, and Herbert). *See, e.g.*, *MY. P.I.I. LLC*, 544 F. Supp. 3d at 1344 ("And, at [summary judgment], the Court cannot weigh the evidence or engage in credibility determinations." (first quoting *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); and then quoting *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) ("Issues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment."))).

Horowitz also claims that "[i]t is an uncontroverted fact that Plaintiff never had reasonable

---

[15] And, while Pliske later admitted that the vessel had some open issues, he was clear that none of those items would've prevented him from allowing *his own children* to sleep on the yacht:

> Q. And as a matter of fact, well, let me just ask this question. Would you allow your kids to sleep in a boat overnight that did not have a sealed bulkhead between engine spaces and the passenger space?
>
> A. Yeah, well, I guess I have.
>
> Q. Okay, without a carbon monoxide or smoke alarm?
>
> A. Yeah, I guess I have.
>
> Q. Is that safe?
>
> A. No.

Pliske Dep. at 79:12–21.

use of the boat during his ownership of the yacht." Horowitz's MSJ at 12 (citing Horowitz's SOF ¶ 24). But that proposition isn't uncontroverted at all. *See* Allied Marine's Response SOF ¶ 24 ("Disputed. Same responses as Paragraph 17, 18, and 22 above."); *id.* ¶ 17 ("Disputed. The vast majority of issues reported by Mr. Horowitz were resolved, and at the time of Plaintiff's January 1, 2021[,] demand letter, the only few pending items under warranty were those listed in Paragraph 7 above."); *id.* ¶ 18 ("Disputed that the boat has major electrical, mechanical, or operational defects . . . ."); *id.* ¶ 22 ("Disputed that Plaintiff's usage history of the boat is attributed solely to defects claimed by Plaintiffs, as the boat was voluntarily placed in dry storage for two months. Moreover, the Plaintiff made major modifications to the boat to run the air conditioning while out of the water at Plaintiff's dock, indicating usage without the engines." (first citing Horowitz's Decl. ¶ 8(aa); and then citing Rossi's Decl. ¶ 20)). Given this conflicting evidence, we'll proceed to trial on Horowitz's claim that the yacht was unmerchantable. *See Masforce Eur., BVBA v. Mastry Marine & Indus. Design, Inc.*, 2013 WL 12156533, at *10 (M.D. Fla. Oct. 24, 2013) (Bucklew, J.) ("In the face of conflicting evidence, a question of merchantability is reserved for the trier of fact and cannot be resolved by summary judgment." (citing *R.A. Jones & Sons, Inc. v. Holman*, 470 So. 2d 60, 65 (Fla. 3d DCA 1985))).

*Second*, we reject Horowitz's claim that there's no dispute about "whether the yacht conforms to the promises or affirmations of fact made on the container or label." Horowitz's MSJ at 11. The parties, after all, very much disagree about what those promises were and where they came from. So, for instance, pointing to the "builder's plate"—a label affixed to his yacht—Horowitz maintains that "the boat conforms to European CE standards for a Design Category B boat," and that, as a result, it "[was] required to comply with the standards issued by RINA (Registre Italiano Navale)." Horowitz's MSJ at 13 (cleaned up). He also says that the Owner's Manual he received when he purchased the yacht "represented the following standards for the boat's electrical system: The design and realization of the system has been carried out according to the rules of Ri.Na (Registro Italiano Navale) and UNI

29

EN ISO and ABYC Standards." *Id.* at 14.[16] And, after outlining a set of deficiencies that (he says)

violate these standards, Horowitz concludes: "The RIVA was not properly built and is not in full

compliance with the RINA and ISO rules and standards." *Id.* at 15.

But, as Allied Marine points out, Horowitz *agreed* that the yacht "would not be built to any

classification society or trade association's standards." Allied Marine's MSJ Response at 9. And that's

exactly what the express terms of *both* the Purchase Agreement *and* the Limited Warranty suggest.[17]

Here's the Purchase Agreement:[18]

> **8. Acceptance of Technical Specifications**. Buyer understands and acknowledges
> that the Yacht and its components are built to manufacturer's plans and specifications,
> in manufacturer's sole discretion with respect to construction methodology and
> practice as well as systems designs, including, without limitation, specifications for hull
> structure, mechanical systems, electrical systems and hull design ("Technical
> Specifications"). Buyer accepts the Technical Specifications in full. The interpretation
> and implementation of the Technical Specifications shall be in accordance with
> manufacturer's standards, and not pursuant to any classification society or trade
> association's standards or similar codes except if, and as, specifically set forth in the
> Technical Specifications.

Purchase Agreement ¶ 8; *see also* Limited Warranty ("**Exclusions:** This Limited Warranty excludes

and does not cover: . . . i. Any defect or repair requiring redesign of the Yacht or claims of non-

---

[16] Horowitz hasn't made it easy for us to track his citations to the record. Here, for instance, he cites only "SOF 25." But his most recent amended statement of material facts—the operative one—doesn't include a page 25. And, while it does have a *paragraph* 25, that paragraph doesn't support this assertion at all. After some digging, we determined that Horowitz is here actually referring to the *first* of his three statements of material facts. But, since that statement has been *twice* superseded, we note that the correct citation (in his latest statement of material facts) should have been to paragraph 55. *See* Horowitz's SOF ¶ 55 ("The Owner's Manual represented the following standards for the boat's electrical system . . . ."). And, for what it's worth, Allied Marine disputes the assertion Horowitz advances in paragraph 55. *See* Allied Marine's Response SOF ¶ 55 ("Disputed. Same response as Paragraph 34(h) above."). In paragraph 34(h), Allied Marine had said: "Undisputed that the portion of section 5.1 of the owner's manual that references RINA and ABYC are typos, as those rules and standards are not applicable to the subject boat." *Id.* ¶ 34(h).

[17] As we have said many times, "[t]he words of the governing text are of paramount concern[.]" SCALIA & GARNER 56.

[18] "When deciding an issue governed by the text of a legal instrument, the careful lawyer or judge trusts neither memory nor paraphrase but examines the very words of the instrument." SCALIA & GARNER 56.

compliance with the laws, regulations, rules, or recommended standards of any trade association, or governmental, or regulatory body or agency other than the governmental bodies or agencies of the United States." (emphasis in original)). Because "[w]ords are to be understood in their ordinary, everyday meanings," A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012), we agree with Allied Marine that "the Plaintiff cannot complain that the Yacht is supposedly unmerchantable or unseaworthy because of noncompliance with standards that *he agreed* the Yacht would not be built to," Allied Marine's Response at 9 (emphasis in original).[19]

Against all this, Horowitz says that we "need look no further than the Owner's manual" to see that, when Ferretti S.p.A. promised to build the yacht to its "plans and specifications, in [its] sole discretion with respect to construction methodology and practice as well as systems designs," Purchase Agreement ¶ 8, it *really* meant the "Ri Na (Registro Italiano Navale), Uni En Iso[,] and ABYC Standards" and "EC conformity," Horowitz's MSJ Reply at 4–5. Two problems with this. *One*, we have no idea (because Horowitz never tells us) whether the Owner's Manual constitutes the "Technical Specifications" the Purchase Agreement here refers to. *See generally* Horowitz's MSJ; Horowitz's MSJ Reply. Nor have we found (again, because Horowitz never points us to one) any mechanism by which the Purchase Agreement—or the Limited Warranty—incorporated that Owner's Manual. And (it probably goes without saying) we don't grant summary judgment on arguments a party hasn't supported with either evidence or legal citations. *See MY. P.I.I. LLC*, 544 F. Supp. 3d at 1346 ("The

---

[19] The parties never tell us what the American—as opposed to the European—standards require. *See generally* Horowitz's MSJ; Allied Marine's MSJ Response; Horowitz's MSJ Reply. So, we cannot say (as Horowitz requests) that the yacht failed to conform to the standards the parties *agreed to* in the Purchase Agreement and the Limited Warranty. *See Rybovich Boat Co., LLC v. M/Y BLUE STAR*, 546 F. Supp. 3d 1270, 1274 (S.D. Fla. 2021) (Altman, J.) ("At summary judgment, the moving party bears the initial burden of 'showing the absence of a genuine issue as to any material fact.' (quoting *Allen*, 121 F.3d at 646)); *see also Dent v. Composite Structures, Inc.*, 2009 WL 3837866, at *2 (M.D. Fla. Nov. 17, 2009) (Covington, J.) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (quoting FED. R. CIV. P. 56(c)).

law demands that lawyers present their clients' cases with argument and citation. It doesn't—nor should it—permit lawyers to fling whatever arguments they might conjure (however far-fetched or frivolous) at the judge in the hopes that, by a prodigious use of a Westlaw account, that intrepid judge (and his smart law clerk) might find the one case that stands in support of their proposition."); *see also Esformes*, 60 F.4th at 635 ("'We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.'" (quoting *Sapuppo*, 739 F.3d at 681)); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived.").

*Two*, the record isn't at all clear about whether Horowitz, in fact, received the Owner's Manual he's relying on at the closing *for this yacht*. *See* Allied Marine's Response SOF ¶ 34(f) ("Disputed that the Owner's manual for the Yacht is Bates stamped Allied 001730-002051, as that is the manual for the Riva 38-27 [a different yacht]. The manual for the Yacht is Bates stamped Horowitz Rule 26 0146-0507."). We'll let the parties clarify this—and other issues—at trial.

*     *     *

We therefore **DENY** Horowitz's MSJ.

### B.  Allied Marine's Motion for Partial Summary Judgment

Allied Marine asks us to enter partial summary judgment in its favor on four issues. *First*, it wants us to find "that the yacht was not required to be built to any standards other than the 2013 Directive and ISO standards that were harmonized as of the commencement of construction of the yacht." Allied Marine's MSJ at 15 (cleaned up). *Second*, it asks us to hold that Horowitz's breach-of-warranty claims "cannot be based on issues that fall within the express exclusions in the Limited Warranty." *Id.* at 16 (cleaned up). *Third*, it invites us to find that warranty problems "for which [Allied Marine] was afforded no notice or opportunity to cure" cannot sustain a breach-of-warranty claim. *Id.*

at 17 (cleaned up). *Fourth*, it insists that Horowitz's "breach of warranty claims cannot be based on conditions [ ] in existence at the time of delivery." *Id.* at 19 (cleaned up). After careful review, we **GRANT in part** and **DENY in part** Allied Marine's MSJ.

### 1.  The Applicable Standards

Allied Marine says that the Purchase Agreement "affirmatively states that the Yacht would not be built to the standards of classification societies, such as RINA, or voluntary trade associations, such as ABYC and the NFPA." *Id.* at 15 (citing Purchase Agreement ¶ 8). It also maintains that "[t]he Limited Warranty expressly excludes claims of noncompliance with trade associations or any other governmental or agency bodies other than the United States." *Ibid.* (citing the Limited Warranty at 59). And (it adds) the yacht was not "required to adhere to ISO standards that were not yet harmonized into the 2013 Directive at the time of commencement of the construction of the subject Yacht." *Id.* at 16. We agree on all counts.

Horowitz contends that "the manufacture's [sic] specifications include RINA, ABYC, ISO, and EC specifications and requirements" because the "Owner's manual . . . states the vessel design and realization is carried out in [sic] according to the rules of Ri Na (Registro Italiano Navale), Uni En ISO and ABYC Standards." Horowitz's MSJ Response at 5. As we've explained, however, the express terms of the Purchase Agreement make clear that the "Yacht and its components are built to manufacturer's plans and specifications, in manufacturer's sole discretion with respect to construction methodology and practice as well as systems designs, including without limitation, specifications for hull structure, mechanical systems, electrical systems and hull design ('Technical Specifications')." Purchase Agreement ¶ 8. And *both* the Purchase Agreement *and* the Limited Warranty state unequivocally that "[t]he interpretation and implementation of the Technical Specifications shall be in accordance with the manufacturer's standards, and *not* pursuant to any classification society or trade association's standards or similar codes[.]" *Ibid.* (emphasis added); *see also* Limited Warranty at 59

("***Exclusions:*** This Limited Warranty excludes and does not cover: . . . i. Any defect or repair requiring redesign of the Yacht or claims of non-compliance with the laws, regulations, rules, or recommended standards of any trade association, or governmental, or regulatory body or agency other than the governmental bodies or agencies of the United States." (emphasis in original)). Horowitz never explains how the Owner's Manual changes the unambiguous terms of these two binding documents. *See generally* Horowitz's MSJ Response.

Still parrying, Horowitz contends that "the provision [in the Purchase Agreement disclaiming that the yacht would be built to trade-association standards] is ambiguous which precludes summary judgment." Horowitz's MSJ Response at 5. But Horowitz doesn't even cite—much less quote—the provision he claims to find ambiguity in; nor (it goes without saying) does he tell us what's ambiguous about it. *See generally ibid.* Again, a party cannot survive summary judgment with perfunctory, unsupported arguments. *See, e.g., Michaels v. Sasser's Glass Works Inc., et al.*, 2023 WL 2572245, at *14 (S.D. Fla. Mar. 20, 2023) (Altman, J.) ("The law is well-settled that 'perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.'" (first quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009); and then quoting *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) ("We will not address this perfunctory and underdeveloped argument."))). In any case, as we've seen, the governing provisions of *both* the Purchase Agreement *and* the Limited Warranty are anything but ambiguous. They, on the contrary, make clear that the yacht was built *only* to the manufacturer's standards—and that the Limited Warranty allows *only* for claims of noncompliance with *American* governmental standards. *See* Purchase Agreement ¶ 8 ("Buyer understands and acknowledges that the Yacht and its components are built to manufacturer's plans and specifications, in manufacturer's sole discretion with respect to construction methodology and practice as well as systems designs, including without limitation, specifications for hull structure, mechanical systems, electrical systems and hull design ('Technical Specifications'). . . . The

interpretation and implementation of the Technical Specifications shall be in accordance with the manufacturer's standards, and *not* pursuant to any classification society or trade association's standards or similar codes . . . ." (emphasis added)); Limited Warranty at 59 ("**Exclusions:** This Limited Warranty excludes and does not cover: . . . i. Any defect or repair requiring redesign of the Yacht or claims of non-compliance with the laws, regulations, rules, or recommended standards of any trade association, or governmental, or regulatory body or agency other than the governmental bodies or agencies of the United States." (emphasis in original)). We therefore agree with Allied Marine that "[Horowitz] cannot complain that the Yacht is supposedly unmerchantable or unseaworthy because of noncompliance with standards that *he agreed* the Yacht would not be built to." Allied Marine's MSJ at 16. And we accordingly **GRANT** Allied Marine's MSJ on this issue.[20]

### 2. The Limited Warranty's Exclusions

In its second request for summary judgment, Allied Marine asks us to find that "Horowitz cannot proceed with any warranty claims, express or implied, that are expressly excluded under the Limited Warranty." Allied Marine's MSJ at 16. Here, Allied Marine is only partly right. Horowitz seems to agree that he cannot rely on any express warranties the parties excluded from the Limited Warranty.

---

[20] One more thing here. Allied Marine wants us to apply certain "ISO standards that were harmonized as of the commencement of the construction of the Yacht." Allied Marine's MSJ at 15. The only support Allied Marine offers for this position is the following testimony from Simone Meletti, Allied Marine's *own* corporate representative:

> Q: To your knowledge, do -- what objective standards was RIVA 38-51 constructed?
>
> A: Well, the -- RIVA, that -- specific boat is -- is stated in the -- in the contract that the -- that is refer to the manufacturer's standard, which is Ferretti S.p.A. standards, which are basically the -- the standards that comply to the EU Directive.

Simone Meletti's Deposition Testimony [ECF No. 63-1] at 56:1–8 (errors in original); *see also* Allied Marine's SOF ¶ 2 (citing Meletti's testimony for its position on ISO standards). Needless to say, we won't (at this preliminary phase of the case) apply the ISO standards on the basis of a seemingly unsupported claim by Allied Marine's *own* witness. Still, Allied Marine will be entitled to present evidence on the applicability of these standards—if it chooses to—at trial.

*See* Horowitz's MSJ Response at 6 (suggesting *only* that, "if the warranty fails in its essential purpose[,] remedies under the UCC are available to [him]" and contending that he still "has a claim for breach of implied warranty of merchantability," but never arguing that he can rely on remedies the parties *excluded* from the Limited Warranty). Nor could he contend otherwise. *See 3455, LLC v. ND Properties, Inc.*, 631 F. App'x 701, 710 (11th Cir. 2015) ("Parties are free to contract on any terms as they see fit, absent illegality or public policy concerns, and courts will not interfere with the parties' decision."). We thus **GRANT** this part of Allied Marine's MSJ.

At the same time, as we've seen, Horowitz still has an *implied*-warranty claim under the Magnuson-Moss Warranty Act. And a supplier may *not* "disclaim" or "modify" an "implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product." 15 U.S.C. § 2308. There's no dispute that Allied Marine issued a written warranty in this case. *See* Purchase Agreement ¶ 9 ("THE YACHT IS BEING WARRANTED SOLELY BY [ALLIED MARINE], A SEPARATE LEGAL ENTITY . . . . A COPY OF [ALLIED MARINE'S] LIMITED WARRANTY IS ATTACHED HERETO[.]"); *see also* Limited Warranty at 59 ("[Allied Marine] warrants, subject to the limitations and exclusions below . . . that it will repair or replace defects . . . ."). Under the plain language of the MMWA, then, Allied Marine had *no* authority to disclaim or modify the implied warranty of merchantability.[21] And we will not contravene the plain language of the statute. *See* SCALIA & GARNER 56 ("The words of the governing text are of paramount concern, and what they convey, in their context, is what the text means."); *see also Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) ("By its

---

[21] Plus, by now, Allied Marine has conceded that the implied warranty applies here. *See* Allied Marine's Notice of Clarification Regarding the Hearing on Mar. 28, 2023 [ECF No. 141] ("Allied Marine confirms that it is the warrantor of the implied warranty of merchantability for the Plaintiff's vessel[.]"); *see also* Stipulation [ECF No. 21] at 1 ("Allied Marine, Inc. agrees to the existence of the implied warranty of merchantability during the relevant dates of this action, but does not concede that such warranty has been breached[.]").

plain language, Section 2308 prohibits sellers from disclaiming implied warranties when either a full or limited warranty is provided by the seller." (collecting cases)); *Barnext Offshore*, 2011 WL 13223746, at *14 ("Where a party provides a written warranty and seeks to limit the duration of all warranties (express and implied), the MMWA restricts the party's ability to do so.").

In any event, Allied Marine cites *no authority* for its view that, contra the unambiguous terms of the MMWA, the parties' exclusions in the express written warranty *can* modify or otherwise restrict Horowitz's implied-warranty claim. *See* Allied Marine's MSJ at 16 (citing no cases for this argument); Allied Marine's MSJ Reply (same). And a party's failure to cite relevant legal authorities for its position is reason enough to deny that party's motion. *See, e.g., Esformes*, 60 F.4th at 635 ("'We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.'" (quoting *Sapuppo*, 739 F.3d at 681)); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived.").

Nor would Allied Marine's proposed rule make any sense. The whole point of an implied warranty, after all, is that it's separate from—and independent of—the terms of any express warranty. Allied Marine's position would allow a supplier to vitiate the implied warranty through the limitations of the express warranty—thus subsuming the former into the latter and (essentially) rendering the implied warranty superfluous. Since the MMWA specifically precludes this result—and given that the result would be counter-intuitive in any event—we **DENY** this part of Allied Marine's second request for summary judgment.

### 3.   Issues Outside the Revocation Letter

In its third request for summary judgment, Allied Marine asks us to preclude Horowitz from bringing "claims based on alleged defects that were disclosed to [the] Defendants for the first time in the [Amended] Complaint itself." Allied Marine's MSJ at 18. Allied Marine also contends "that Plaintiff is precluded as a matter of law from judgment on breach of warranty claims that were not specifically and particularly included in [the] Plaintiff's pre-suit Revocation Letter." *Ibid.* We'll address both requests in turn.

*First*, we agree that, under the express terms of the Limited Warranty, Horowitz had an obligation to notify Allied Marine *in writing* of any problems he was having with the yacht. As the Limited Warranty makes plain:

> **Procedures**. Notice of defects occurring under this Limited Warranty **must** be given to [Allied Marine] (and to the dealer from whom the Yacht was purchased, if applicable) in writing within thirty (30) days after the date (a) of discovery of the defect or (b) it should reasonably have been discovered, at the address below, by certified mail, return receipt requested.

Limited Warranty at 59 (emphasis in original). The Limited Warranty then goes on to outline what *precisely* Horowitz must include in his notices:

> **Notices must include the owner's name, address, phone number, the hull number, a description of the defect, the date it was discovered, the date of purchase, and the name and address of the party from whom the Yacht was purchased.** A copy must also be sent to the dealer from whom the Yacht was purchased. The Owner must thereafter provide all information requested by [Allied Marine] regarding the alleged defect. The Owner must obtain [Allied Marine]'s written approval before repairing the yacht and must follow all applicable Manufacturer procedures. For items not covered by this Limited Warranty, the Owner must contact the component manufacturer. The provision of a survey to [Allied Marine] shall not constitute notice of defects or warranty claims hereunder unless the surveyor in such survey specifically indicates that a listed item constitutes in such surveyor's opinion a defect covered by this Limited Warranty.

*Ibid.* (emphasis in original). Again, we aren't free to rewrite the parties' agreement. *See, e.g.*, *City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 (Fla. 4th DCA 2017) ("[T]he court's task is to apply the parties' contract as written, not 'rewrite' it under the guise of judicial construction." (cleaned up));

*Gulliver Schs., Inc. v. Snay*, 137 So. 3d 1045, 1047 (Fla. 3d DCA 2014) ("Where contracts are clear and unambiguous, they should be construed as written, and the court can give them no other meaning.").

Horowitz also had an obligation to give Allied Marine written notice of any claims predicated on implied warranties. *See* FLA. STAT. § 672.607(3)(a) ("The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]").[22] And Horowitz concedes that his Amended Complaint identified several new problems he had never raised with Allied Marine in writing before. *See* Allied Marine's SOF ¶ 52 ("Notably, the Complaint alleged many new issues that were never raised under the Warranty and were not mentioned in the Revocation Letter." (first citing Compl. [ECF No. 1] ¶¶ 121–55; then citing Am. Compl. ¶¶ 139–79; and then citing Revocation Letter)); Horowitz's Response SOF ¶ 52 ("Undisputed the Complaint was more extensive than the revocation letter."). Given the plain language of the Limited Warranty and § 672.607(3)(a), we **GRANT** Allied Marine's MSJ as to any defects Horowitz raised for the first time in his Amended Complaint.

*Second* (and by contrast), we won't limit Horowitz *only* to those claims he asserted in the Revocation Letter because he's shown us written communications—separate and apart from the Revocation Letter—in which he notified Allied Marine of certain *other* problems he was having with the yacht. "On May 21, 2020," for instance, "Plaintiff warned of litigation if the vessel's defects were not corrected." Horowitz's SOF ¶ 8; Allied Marine's SOF ¶ 8 ("Undisputed that the communication

---

[22] "Under the futility doctrine," it's true, "a party may be excused from performing a condition precedent to enforcement of the contract, if performance of the condition would be futile." *IET, Inc. v. Intellocorp*, LLC, 357 So. 3d 755, 758 (Fla. 3d DCA 2023). But this exception only excuses a party from performing a condition precedent in *a contract*—not, as here, from a notice requirement that's imposed by statute. *See Lamberti v. Mesa*, 29 So. 3d 446, 450 (Fla. 4th DCA 2010) ("While the doctrine of futility may excuse a party from performing a condition precedent in a contract, that doctrine does not apply to excuse a statutory condition precedent. To impose a common law doctrine to eliminate a statutory condition precedent would be to rewrite the statute."). In any event, Horowitz never deploys this futility exception as justification for his failure to give Allied Marine pre-suit notice about the issues he raises for the first time in the Amended Complaint. *See generally* Horowitz's MSJ; Horowtiz's Response MSJ; Horowtiz's Reply MSJ. He's thus forfeited any such argument.

occurred, albeit on June 18, 2020."). Similarly, "[o]n July 10, 2020, Plaintiff requested a replacement

boat from Defendant due to major electrical issues." Horowitz's SOF ¶ 9; Allied Marine's Response

SOF ¶ 9 ("Undisputed that the communication occurred. However, the only issues pending at that

time were related to component parts[.]").[23]

In Allied Marine's view, because the "Plaintiff alleges in his Amended Complaint that he gave

adequate notice in his Revocation Letter," he should be "held to such allegations and be limited to the

specific and particularized defects mentioned therein." Allied Marine's MSJ at 17 (citing Am. Compl.

¶¶ 105–06). But these paragraphs of the Amended Complaint never suggest that the Revocation Letter

included *all* of Horowitz's written complaints about the yacht. Here's what those paragraphs say:

> 105. On January 1, 2021, Plaintiff sent a written notification to the Warrantor and
> Seller of its Revocation of Acceptance and intent to rescind the contract for a number
> of reasons including the fact that the electrical issues required the vessel to be shut
> down while underway creating a serious life and safety hazard; the swim platform
> spontaneously lowered while the vessel was in operation resulting in the boat limping
> home; and control switches failed and corroded due to a combination of water
> instruction and stray current.
>
> 106. The January 1, 2021, notice also informed the Warrantor and Seller the vessel was
> unreliable, unmerchantable, unseaworthy and non-conforming to industry standards
> and of Defendant's failure to repair or replace the defective vessel or provide a refund.

---

[23] Here, as we've seen, Allied Marine insists that these *other* communications were about component parts *only*—presumably because the Limited Warranty doesn't cover component parts. *See* Limited Warranty at 59 ("COMPONENTS ARE WARRANTED SOLELY BY THE MANUFACTURER OF PARTS AND EQUIPMENT SUPPLIED TO THE YACHT MANUFACTURER BY OTHERS IN ACCORDANCE WITH PUBLISHED WARRANTIES BUYER SHALL RECEIVE AT TIME OF PURCHASE[.]"). But Allied Marine has shown us no evidence for its view that these *other* complaints—the ones that *weren't* included in the Revocation Letter—were limited *only* to component parts. *See generally* Allied Marine's MSJ. And, since Allied Marine bears the burden of *proving*—with citations to specific items of evidence in the record—the absence of a genuine issue of material fact, this omission is fatal to its request. *See, e.g.*, *Allen*, 121 F.3d at 646 ("The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party."); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed *must* support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only) admissions, interrogatory answers, or other materials[.]" (emphasis added)).

Am. Compl. ¶¶ 105–06. In other words, Paragraphs 105 and 106 outline the types of problems Horowitz had complained about in the Revocation Letter. But these paragraphs by no means suggest that those were the *only* defects Horowitz had identified—nor do they imply that the Revocation Letter was the *only* written complaint Allied Marine had received. Since, in these *other* communications, Horowitz notified Allied Marine (in writing) about problems he was having with the yacht—and given that some of these problems appear not to have been included in the Revocation Letter, *see* Horowitz's Response at 7 ("Defendant asserts that Plaintiff's breach of warranty claims should be limited to those listed in his [pre-suit Revocation Letter]. This ignores the fact that Plaintiff gave notice of many deficiencies before the revocation, which were not cured[.]")—we **DENY** Allied Marine's request that we limit Horowitz's claims *only* to those problems he raised in the Revocation Letter.[24]

### 4.   The Yacht's Condition at Delivery and Acceptance

In its final argument for summary judgment, Allied Marine contends that Horowitz "should be precluded from claiming noncompliance and nonconformity" for "those conditions already in existence at the time of delivery and acceptance" of the yacht. Allied Marine's MSJ at 19. The thrust of Allied Marine's position seems to be that, while represented by counsel and after conducting a pre-purchase survey, "Horowitz agreed that the Yacht was compliant and that he was satisfied with the Yacht." *Ibid.* Indeed, Allied Marine says, "[b]y executing the Acceptance of New Vessel, while being represented by counsel, Plaintiff expressly agreed that the Yacht was 'compliant' and also agreed to waive any claims of noncompliance." Allied Marine's Reply at 9 (quoting Acceptance of New Vessel [ECF No. 114-1] at 2).

---

[24] Allied Marine may well have questions about the timeliness and sufficiency of these *other* pre-suit notices. But, "[w]here the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact." *Absolute Trading Corp. v. Bariven S.A.*, 503 F. App'x 694, 697 (11th Cir. 2013) (citing *T.J. Stevenson & Co. v. 81,193 Bags of Flour*, 629 F.2d 338, 359 (5th Cir. 1980)).

Here, however, Allied Marine simply misreads the Acceptance of New Vessel. In that document, Horowitz agreed as follows:

> As Buyer for the above referenced Vessel, I hereby accept the Vessel as compliant with the [Purchase Agreement] and acknowledge that all terms and conditions have either been performed or are hereby waived. I am satisfied with the Vessel pursuant to the terms and conditions of the [Purchase Agreement] for the purposes of this transaction. I agreed to accept delivery of said vessel and pay the balance due thereon under said [Purchase Agreement] and otherwise close this transaction in accordance with the terms and conditions contained in said [Purchase Agreement].

*Ibid.* Horowitz thus plainly accepted the vessel "as compliant with the" Purchase Agreement. And the Purchase Agreement laid out a detailed set of financial and commercial terms—including a "base price [of] $1,170,000.00," Purchase Agreement at 49; "factory options [of] $262,755.28," *ibid.*; a requirement that, "[p]rior to Closing, Buyer [had to] pay the Balance Due in full," *id.* ¶ 1; a condition that "[d]elivery [would] be made at FGA's place of business," *id.* ¶ 2; a prohibition against "Buyer . . . assign[ing] this Agreement without FGA's consent," *id.* ¶ 11; and a notation that the sale was "subject to a trial run and survey, which [was to] be completed by Buyer [at Buyer's expense] on or before March 3, 2020," *id.* ¶ 18. But the Acceptance of New Vessel tells us *nothing* about whether Horowitz was claiming that the warranties he received—either express (through the Limited Warranty) or implied—had been satisfied. Nor (it goes without saying) did Horowitz disclaim any of those warranties. And that's because the Limited Warranty and the Purchase Agreement are two *separate* documents—each laying out the terms of *separate* rights and obligations. In the Acceptance of New Vessel, then, Horowitz was simply saying that he had received a boat that met certain agreed-upon specifications at the agreed-upon date, place, and time—and that, as a result, he was prepared to pay the agreed-upon price in the agreed-upon currency on the agreed-upon terms.[25] And, of course, the fact that Horowitz had a lawyer—or that he conducted a survey—is neither here nor there.

---

[25] Again, Allied Marine's position makes little sense. The whole point of a warranty (express or implied) is to protect a buyer who might not be aware, on the day of acceptance, of certain defects in the

In any event, "[u]nder Florida law, the question of waiver is an issue of fact." *QBE Ins. Corp. v. Dome Condo. Ass'n, Inc.*, 2009 WL 10668915, at *4 (S.D. Fla. June 2, 2009) (Seitz, J.) (citing *WSG West Palm Beach Dev., LLC v. Blank*, 990 So. 2d 708, 715 (Fla. 4th DCA 2008)). "Consequently, summary judgment is inappropriate where the facts and circumstances indicate a possibility of waiver." *Ibid.* (first citing *Goodwin v. Blu Murray Ins. Agency, Inc.*, 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006); and then quoting *Woodruff v. Gov't Emps. Ins. Co.*, 669 So. 2d 1114, 1115 (Fla. 1st DCA 1996) ("[Q]uestions of waiver and estoppel typically involve fact issues inappropriate for summary judgment.")). We therefore **DENY** Allied Marine's final request for summary judgment.

\*　　\*　　\*

Accordingly, for the reasons outlined in this Order, we hereby **ORDER AND ADJUDGE** as follows:

1. The Motion for Reconsideration [ECF No. 95] is **GRANTED in part and DENIED in part** as set forth in this Order.

2. The Plaintiff's Amended Motion for Partial Summary Judgment [ECF No. 111] is **DENIED**.

3. The Defendant's Amended Motion for Partial Summary Judgment [ECF No. 113] is **GRANTED in part and DENIED in part** as outlined in this Order.

---

property. Take a home purchase, for example. Before closing, the buyer (while represented by counsel) hires an inspector who conducts an inspection, which reveals certain obvious problems with the home. Despite these problems, the buyer closes the home purchase and wires the seller his money. Six months later, though, the roof caves in and the house is destroyed. A subsequent inquest reveals that the seller knew about the roof defect and failed to disclose it. Nothing in the buyer's decision to close—or pay—works as a waiver of his right to pursue the seller for breaches of express or implied warranties that may not have been obvious to the buyer at closing. Note, of course, that we don't care, in this scenario, that the buyer is represented by counsel—just as we don't care that he hired an inspector and conducted a survey.

**DONE AND ORDERED** in the Southern District of Florida on May 19, 2023.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record