UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-60358-ALTMAN/Hunt

**KENNETH A. HOROWITZ**, *as*
*Assignee of Underwater Exploration Company Inc.*,

     *Plaintiff*,

*v.*

**ALLIED MARINE, INC.**,

     *Defendant.*

_____/

## OMNIBUS ORDER

     The parties have filed several post-trial motions, which we'll adjudicate together here. *First*, Allied Marine, Inc., our Defendant, has filed an Amended Motion for Remittitur or New Trial [ECF No. 248]. *Second*, Kenneth Horowitz, our Plaintiff, has filed a Motion to Tax Costs [ECF No. 243]. *Third*, Allied Marine has filed its own Motion to Tax Costs [ECF No. 247]. After careful review, we **DENY** the Defendant's Amended Motion for Remittitur or New Trial, **GRANT in part** and **DENY in part** the Plaintiff's Motion to Tax Costs, and **DENY** the Defendant's Motion to Tax Costs.

### BACKGROUND

     After more than three years of litigation, the jury trial in this case began on April 22, 2024. *See* Paperless Minute Entry for Trial Day 1 [ECF No. 210]. At trial, Horowitz presented three counts from his Amended Complaint [ECF No. 27] to the jury: two express-warranty claims under the Limited Warranty, *see* Amnd. Compl. ¶¶ 209–29 (Count I) (alleging that the express warranty "fails of its essential purpose"); *id.* ¶¶ 267–83 (Count IV) (breach of express warranty), and one claim for breach of the implied warranty of merchantability, *id.* ¶¶ 299–315 (Count VI). On April 29, 2024—after four days of witness testimony, *see* Paperless Minute Entry for Trial Day 2 [ECF No. 213; Paperless Minute

Entry for Trial Day 3 [ECF No. 214]; Paperless Minute Entry for Trial Day 4 [ECF No. 215]; Paperless Minute Entry for Trial Day 5 [ECF No. 216], and another day of deliberations, *see* Paperless Minute Entry for Trial Day 6 [ECF No. 218]—the jury returned its verdict.

The jury determined that Allied Marine was *not* liable on the express-warranty claims Horowitz had asserted in Counts I and IV, *see* Jury Verdict [ECF No. 221] at 1, but found Allied Marine liable under Count VI for breaching the implied warranty of merchantability, *see id.* at 3. The jury calculated Horowitz's damages as to Count VI to be $548,755.28, *id.* at 4, and found that Horowitz had failed to mitigate his damages by $2,700.00, *id.* at 5. Accordingly, the jury awarded Horowitz a total of $546,055.28 in damages. *Ibid.* On April 30, 2024, we entered judgment in favor of Allied Marine on Counts I and IV, *see* Final Judgment [ECF No. 223] ¶ 2, and in favor of Horowitz on Count VI, awarding him $546,055.28 in damages, *id.* ¶ 1.

On May 28, 2024, Allied Marine timely filed its First Motion for a New Trial [ECF No. 242]. *See* FED. R. CIV. P. 59(b) ("A motion for a new trial must be filed no later than 28 days after the entry of judgment."); *see also Precision Wellness, LLC v. Demetech Corp.*, 2023 WL 5448038, at *4 (S.D. Fla. Aug. 24, 2023) (Bloom, J.) ("[T]he 28-day period in which to file a Rule 59 Motion is triggered not when the Final Judgment is signed, but rather '28 days after the entry of the judgment' . . . on the docket[.]" (first quoting FED. R. CIV. P. 59(e); and then citing *Ramos v. Boehringer Manheim Corp.*, 896 F. Supp. 1213, 1214 n.1 (S.D. Fla. 1994) (Mishler, J.))). Before we could review that Motion on its merits, however, Allied Marine filed an Amended Motion for a New Trial ("Def.'s Amnd. Mot.") [ECF No. 248], which we accepted, *see* Omnibus Order [ECF No. 246] at 3 (denying Allied Marine's First Motion for a New Trial *as moot* without ruling on the merits); *see also Pate v. Seaboard R.R., Inc.*, 819 F.3d 1074, 1084 (11th Cir. 1987) ("We conclude that a district court may, in its discretion, allow an amendment to a timely motion for a new trial prior to its decision on the merits of the motion and that the court may consider new grounds raised in the amended motion."). The parties have also filed Cross-Motions

to Tax Costs. *See* Plaintiff's Motion to Tax Costs ("Pl.'s Costs Mot.") [ECF No. 243]; Defendant's

Motion to Tax Costs ("Def.'s Costs Mot.") [ECF No. 247]. Each of these motions is now ripe for

resolution. *See* Plaintiff's Motion to Tax Costs Reply ("Pl.'s Costs Reply") [ECF No. 254]; Defendant's

Motion to Tax Costs Reply ("Def.'s Costs Reply") [ECF No. 255]; Defendant's Amended Motion for

New Trial Reply ("Def.'s Amnd. Mot. Reply") [ECF No. 256].

## THE LAW

A motion for a new trial under Federal Rule of Civil Procedure 59(a) may be granted "for any

reason for which a new trial has heretofore been granted in an action at law in federal court," FED. R.

CIV. P. 59(a)(1)(A), including when "the verdict is against the weight of the evidence . . . [or] the

damages are excessive," *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). "[W]hen

considering a motion for new trial, the trial judge may weigh the evidence, but it is proper to grant the

motion only if the verdict is against the great, not just the greater, weight of the evidence." *Ard v. Sw.*

*Forest Indus.*, 849 F.2d 517, 520 (11th Cir. 1988) (citing *Watts v. Great Atl. & P. Tea Co.*, 842 F.2d 307,

310 (11th Cir. 1988)).

While "[f]ederal law governs the decision whether or not to grant a new trial, . . . an issue of

the sufficiency of damages awarded for a state claim is decided under state law." *Collins v. Marriott Int'l,*

*Inc.*, 749 F.3d 951, 960 (11th Cir. 2014). Under Florida law, when "determining whether an award is

excessive or inadequate in light of the facts and circumstances presented to the trier of fact," courts

consider:

> (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on
> the part of the trier of fact;
> (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict
> or misconceived the merits of the case relating to the amounts of damages recoverable;
> (c) Whether the trier of fact took improper elements of damages into account or
> arrived at the amount of damages by speculation and conjecture;
> (d) Whether the amount awarded bears a reasonable relation to the amount of damages
> proved and the injury suffered; and

(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.

FLA. STAT. § 768.74(5). But a court may not disturb the jury's assessment of damages "unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Bould v. Touchette*, 349 So. 2d 1181, 1184-85 (Fla. 1977). And the "party claiming an excessive verdict bears the burden to prove that the amount is not supported by the evidence or that the jury was influenced by matters beyond the bounds of the record." *Subaqueous Servs., Inc. v. Corbin*, 25 So. 3d 1260, 1268 (Fla. 1st DCA 2010).

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." The Eleventh Circuit has held that Rule 54 "creates a presumption in favor of awarding costs to the prevailing party[.]" *Manor Healthcare Corp. v. Lomelo*, 929 F.2d 633, 639 (11th Cir. 1991). A prevailing party is "one who has succeeded on any significant claim affording it some of the relief sought." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791 (1989).

## ANALYSIS

### I.     Allied Marine's Amended Motion for New Trial

We'll start with Allied Marine's request that we "vacate the final judgment, set aside the jury's verdict on Count VI, and order a new trial on the issue of damages for that claim unless Horowitz agrees to remit the excess damages awarded." Def.'s Amnd. Mot. at 5. We won't be doing any of those things.

As we instructed the jury at trial, "[t]he measure of damages [for breach of warranty] is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Apr. 29 Trial Tr. [ECF No. 241] at 1185:5–8; *accord* FLA. STAT. § 672.714(2). The parties stipulated that Horowitz purchased the Yacht for

4

$1,254,000, *see* Joint Pretrial Stipulation [ECF No. 170] at 6 ("The Riva vessel was purchased by Kenneth Horowitz for $1,254,000."), which (all agreed) was evidence of the value of the Yacht as warranted, *cf. A&E Adventures LLC v. Intercard, Inc.*, 529 F. Supp. 3d 1333, 1348 n.11 (S.D. Fla. 2021) (Altman, J.) ("The purchase price a plaintiff was willing to pay for a product in an arms-length transaction is usually *prima facie* evidence of the market value of the product as promised[.]" (cleaned up)); *see also* Verdict Form [ECF No. 221] at 5 ("The total value of damages cannot exceed $1,255,150.00.").[1]

In attacking the jury's verdict, Allied Marine argues that the "evidence does not support a finding that the delivered yacht at the time and place of acceptance was worth more than $1,254,000 . . . [or] less than $1,214,000[,]" Def.'s Amnd. Mot. at 11—*i.e.*, that "the upper limit of the reasonable range of the base damages on Count VI was $41,155[,]" *id.* at 9. But the jury already rejected that defense at trial. *See* Jury Verdict at 4 (concluding that Horowitz's pre-mitigation damages equaled $548,755.28). And, relying on the factors set forth in FLA. STAT. § 768.74(5), so do we.

Allied Marine starts by suggesting that Horowitz's trial evidence somehow established that, "at the time and place of acceptance, the delivered yacht was worth what [Horowitz] paid for it or more," making "no diminished-value damages . . . possible." Def.'s Amnd. Mot. at 12. Here, Allied Marine offers three arguments—all meritless.

*First*, Allied Marine presents a tortured interpretation of Horowitz's trial testimony, which (Allied Marine tells us) shows that, "from Horowitz's own mouth, the value of the yacht at the time and place of acceptance was exactly what he paid for it[.]" *Ibid.* Except that's not what Horowitz said. Here's the relevant exchange from trial:

---

[1] The additional $1,150 reflects the $1,150 service invoice Allied Marine admitted Horowitz should've been permitted to include in his damages calculation. *See* Apr. 29 Trial Tr. at 1144:5–15 ("THE COURT: [I]n no circumstances can the total damages exceed the value of the boat. . . . Plus the $1,150 invoice? MS. WITTER: Yes.").

> Q. Mr. Horowitz, the question that was pending at the time was: What is the value of that Riva to you?
>
> A. Because I was unable to use it, zero.
>
> Q. And what was the value of the Riva after it was delivered to your dock?
>
> A. 1,251,000 -- whatever I paid for it.
>
> Q. No, I meant to you personally, as the user of the boat.
>
> A. Zero.

Apr. 23. Trial Tr. at 168:16–23.

Allied Marine thus ignores Horowitz's *explicit* clarification that, while he "paid" $1,251,000 for the Yacht, he thought it was worth "[z]ero" dollars "after it was delivered to [his] dock[.]" *Ibid.*[2] To assign *any* weight to Allied Marine's out-of-context account of Horowitz's testimony would be to betray our obligation to "[c]onsider[ ] the evidence as a whole, and view[ ] it in the light most favorable to the verdict[.]" *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1265 (11th Cir. 2008); *see also* Jury Instructions [ECF No. 219] at 16 ("[Y]ou must consider all the evidence . . . . To decide whether you believe any witness I suggest that you ask yourself . . . [d]id the witness appear to understand the questions clearly[?]"). Allied Marine cannot cherry-pick testimony to meet its burden of showing that the verdict "was contrary to the manifest weight of the evidence." *Subaqueous Servs.*, 25 So. 3d at 1267 (citing *Brown v. Estate of Stuckey*, 749 So. 2d 490, 494 (Fla. 1999)); *see also Celador Int'l Ltd. v. Walt Disney Co.*, 2010 WL 11505709, at *21 (C.D. Cal. Dec. 21, 2010) (denying a motion for new trial where the "[d]efendants . . . mischaracterize[d] the witness's testimony, citing only incomplete sections of testimony taken out of context").

---

[2] Allied Marine also contends that, by answering the question, "[w]hat *is* the value of the boat to you?" Horowitz only established that he believed the Yacht had "'a negative value' . . . at the time of trial"— and not "at the time and place of acceptance," Def.'s Amnd. Mot. at 16 (quoting Apr. 23. Trial Tr. at 154:19–21 (emphasis added)). This hyper-literalist, misleading account of Horowitz's testimony is directly undercut by Horowitz's clarification that the "value of the Riva after it was delivered" was "[z]ero." Apr. 23. Trial Tr. at 168:16–23; *see also* Jonathan R. Cohen, *The Immorality of Denial*, 79 TUL. L. REV. 903, 913 (2005) (noting that this kind of "[i]t depends on what the definition of 'is' is" argument "speak[s] partial truths to obscure and mislead" (cleaned up)).

*Second*, Allied Marine claims that "Horowitz's own surveyor opined that the value of the yacht that Allied Marine delivered at the time and place of acceptance" was "'approximately $1,600,000[,]' . . . $346,000 more than the value of the yacht as warranted[.]" Def.'s Amnd. Mot. at 12 (quoting Ex. D85 [ECF No. 229-35] at 11). But that valuation came in weeks before delivery, *compare* Ex. D85 at 1 (survey dated February 24, 2020), *with* Ex. P7 [ECF No. 226-1] at 12–14 (delivery certificate dated March 17, 2020), so it doesn't tell us much about the value of the Yacht "at the time and place of acceptance[,]" FLA. STAT. § 672.714(2). In any event, the jury heard *other* evidence suggesting that the Yacht was already defective when it pulled up to Horowitz's dock. *See* Apr. 23 Trial Tr. at 96:18–97:2 ("When it got closer, I noticed that . . . both engine hatches were open, and I heard an alarm going. . . . It was a high heat alarm . . . . I also saw, when I got on it, that there were gauges that were not working."). And the jury was entitled to believe Horowitz's evidence over Allied Marine's. In other words, "a reasonable jury, making its own credibility determinations and weighing the evidence," could conclude that the pre-delivery appraisal value didn't reflect the value of the Yacht as delivered. *Onemata Corp. v. Rahman*, 2022 WL 18278477, at *3 (S.D. Fla. Dec. 7, 2022) (Dimitrouleas, J.).

It's thus simply not the case (as Allied Marine suggests) that "the implications of Horowitz's own sworn testimony and Horowitz's own marine survey make plain that the jury must have ignored these two key pieces of evidence in order to reach its conclusion." Def.'s Amnd. Mot. at 21. The jury *only* ignored Allied Marine's far-fetched interpretations of that evidence. *See Kerrivan v. R.J. Reynolds Tobacco Co.*, 2018 WL 6528415, at *4 (M.D. Fla. June 20, 2018) (Erickson, J.) ("Because the jury chose to accept [the plaintiff's] evidence and reject the defendants' evidence does not mean the verdict was illogical or without a reasonable basis.").

*Third*, Allied Marine asks us to disregard "Horowitz's subjective value conclusion . . . [as] legally insufficient evidence of value in fact" at delivery. Def.'s Amnd. Mot. at 17 (citing *Kia Motors Am., Inc. v. Doughty*, 242 So. 3d 1172, 1175 (Fla. 2d DCA 2018)). According to Allied Marine, the Second District

Court of Appeal's ruling in *Kia Motors* dictates that "a claimant's own subjective value conclusions . . . [are] legally insufficient to establish the delivered [good's] value in fact at the time and place of acceptance." *Id.* at 16 (citing *Kia Motors*, 242 So. 3d at 1177). *Kia Motors* doesn't say that at all.

The court there found that the plaintiffs failed to offer any "evidence that would have enabled the jury to determine the actual value of th[e] defective car at the time and place of sale," since their diminution argument was based only on "defects that did not begin to manifest themselves until nearly a year *after* the car was purchased." *Kia Motors*, 242 So. 3d at 1176. But the court *never* said that a plaintiff's subjective assessment of value is categorically insufficient. *See id.* at 1177 ("We hold *only* that in this case, [the plaintiffs] failed to produce any evidence to prove that value." (emphasis added)). In fact, "[c]ases binding on this court" hold the opposite—*viz.*, "that 'an owner of property is competent to testify regarding its value.'" *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) (first quoting *Dietz v. Consolidated Oil & Gas*, 643 F.2d 1088, 1094 (5th Cir. Apr. 1981);[3] then citing *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975); and then citing *Justice v. Pennzoil Co.*, 598 F.2d 1339, 1344 (4th Cir. 1979)).

Just like any other lay witness's opinion testimony, the "accuracy of [Horowitz's] opinion 'is a matter for cross-examination and goes merely to the weight'" of the evidence. *Chmura v. Monaco Coach Corp.*, 2006 WL 709325, at *4 (M.D. Fla. Mar. 20, 2006) (Bucklew, J.) (quoting *Meredith v. Hardy*, 554 F.2d 764, 765 (5th Cir. 1977)); *see also* FED. R. EVID. 701 advisory committee's note to 1972 proposed rules ("[C]ross-examination and argument will point up the weakness." (cleaned up)). And, since Horowitz presented evidence that the Yacht was already defective at the time of delivery, *see* Apr. 23 Trial Tr. at 96:18–97:2 ("When it got closer, I noticed that . . . both engine hatches were open, and I

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

heard an alarm going. . . . It was a high heat alarm . . . . I also saw, when I got on it, that there were gauges that were not working."),[4] the facts of *Kia Motors* are simply inapposite here. Even after cross-examination, in fact, Horowitz's evidence appeared to persuade the jury that the Yacht's underlying problems manifested at the time of delivery—and that their symptoms persisted long after. *See, e.g.*, Apr. 25 Trial Tr. at 521:6–8 ("If you don't adhere to the standards, aside from the safety issues that I introduced, it also makes the appearance of the gremlins or the intermittent problems more problematic[.]"). We refuse to disturb that reasonable finding. *See Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986) ("[I]t is the province of the jury to assess the probative value of the evidence.").

Nor is Allied Marine correct to suggest that, "exclusive of Horowitz's failure to mitigate damages, the evidence supports diminished-value damages of no more than $40,000 for the yacht itself." Def.'s Amnd. Mot. at 10. Allied Marine arrives at this figure by relying only on the testimony of *its own witness* (and Director), Simone Meletti, who opined that, "[b]ased on the items in the report of the expert that [was] engaged by Allied [Marine] . . . if we consider everything, it would be a few thousands of dollars, like $40,000" to fully repair the Yacht. Apr. 25 Trial Tr. at 672:15–19. But the jury obviously disagreed—and we're not entitled to throw out the jury's verdict (along with Horowitz's evidence) as if Meletti were the only witness who testified at trial.

As we've said, the jury was well within its rights to consider Horowitz's testimony that the value of the Yacht at delivery was "[z]ero" dollars. Apr. 23. Trial Tr. at 168:16–23. And it wasn't unreasonable for the jury to conclude that the diminished value of the Yacht exceeded the summed cost of the discrete repairs Allied Marine recommended. *See* Def.'s Amnd. Mot. at 19 & n.4 ("While it is true that Herbert testified about the cost of repairs for certain electrical items (only), the amount

---

[4] *See also* Apr. 25 Trial Tr. [ECF No. 239] at 523:6–9 ("Q. . . . [D]id the defects . . . [regarding] the noncompliance with the standards -- did those exist at the time the boat was delivered? A. Yes, to the best of my knowledge, absolutely.").

that he gave totaled $1,375.30." (citing Apr. 26 Trial Tr. [ECF No. 240] at 959:5–975:25)); *id.* at 18 ("Meletti testified that the repair of absolutely all of the yacht's problems would cost no more than $40,000[.]" (citing Apr. 25 Trial Tr. at 672:9–19)). After all, Horowitz adduced competent evidence for his view that the Yacht's problems were far more structural[5]—and that they prevented him from using the boat for its intended purpose. *See, e.g.*, Apr. 25 Trial Tr. at 523:3–5 ("It is not safe to be operated by [a] recreational boater, and I would feel uncomfortable being on board that boat as it's being operated."); *id.* at 526:10–14 ("Is the electrical system in the vessel as installed -- is the boat fit for its intended purpose? A. Absolutely not. . . . It's unsafe and it's unreliable."); Apr. 23 Trial Tr. at 146:24–25 ("The boat wasn't safe. It wasn't reliable. I couldn't use it for what I wanted to."). The jury, in sum, after "weigh[ing] conflicting evidence and inferences, and determin[ing] the credibility of the witnesses," *Love v. Pate Stevedoring Co.*, 558 F.2d 769, 772 (5th Cir. 1977) (cleaned up), found Horowitz's theory of the evidence more credible than Allied Marine's—and it just isn't our job to second-guess their decision, *see Isaacs v. Am. Petrofina*, 368 F.3d 193, 196 (5th Cir. 1966) ("It is the function of the jury, not the court, to weigh and evaluate the evidence on both sides of a contested question. If there is a conflict in the evidence, the jury must resolve such conflict." (quoting *Wells v. Warren Co.*, 328 F.2d 666, 668–69 (5th Cir. 1964))).

---

[5] *See, e.g.*, Apr. 25 Trial Tr. at 525:17–526:7 ("[Q]. Is this a major repair to correct all of these issues? A. Yes. It's a huge repair to try to resolve all these issues. Q. And what would be involved? A. It would be a vessel refit, yard period with the refit to -- you know, to repair all those faults that -- the helm station, the engine compartment, the problem with the Seakeeper, the main panel. I mean these are all the major organs of the boat, the working, the brains, the heart, the muscle of the boat. And all this would have to be redone. Wiring runs would have to be replaced. It just goes on and on and on. Q. Okay. Do you have an estimate as to a yard period? A. That would depend on what manpower's available, the lead time for the parts, what would be involved with removing the equipment, whether the structural -- the structure would be have to be taken out. It would be several months, certainly."); Apr. 23 Trial Tr. at 70:5–8 ("[Y]ou should not be having all that electrical problem, and especially the garage by itself, opening and closing by itself; the air conditioning unit, uhm, on and off by itself. It could start a fire, potential fire.").

In a last-ditch effort to avoid paying Horowitz for the diminished value of the Yacht, Allied Marine protests that "only through speculation or conjecture could the jury have arrived at its eye-popping base award of $548,755.28." Def.'s Amnd. Mot. at 21. To overturn a jury's award of damages, a defendant must show that "the jury's damage award exceeds the amount established by the evidence." *Rodriguez*, 518 F.3d at 1266 (first citing *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985); and then citing *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1284 (11th Cir. 2000)); *see also Bould*, 349 So. 2d at 1184 ("A party who assails the amount of a verdict as being excessive[ ] has the burden of showing it is unsupported by the evidence, or that the jury was influenced by passion or prejudice." (cleaned up)). Allied Marine doesn't come close to meeting this burden.

The jury's valuation of Horowitz's damages on Count VI—$548,755.28, *see* Jury Verdict at 4—is not "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Bould*, 349 So. 2d at 1184–85. Indeed, at trial, Horowitz offered competent evidence for his position that his damages were equal to the *full* warranty value of the Yacht. *See, e.g.*, Apr. 23. Trial Tr. at 168:16–23 ("Q. . . . [W]hat was the value of the Riva after it was delivered to your dock? . . . A. Zero."); *id.* at 146:24–25 ("It just didn't work. The boat wasn't safe. It wasn't reliable. I couldn't use it for what I wanted to."). Allied Marine insisted that Horowitz's damages were far lower. *See* Apr. 25 Trial Tr. at 672:15–19 ("[I]f we consider everything, it would be a few thousands of dollars, like $40,000."). The jury, after "weigh[ing] the evidence [and] evaluat[ing] the witnesses' credibility," *Kerrivan v. R.J. Reynolds Tobacco Co.*, 953 F.3d 1196, 1206 (11th Cir. 2020) (citing *Lassitter v. Int'l Union of Operating Eng'rs*, 349 So. 2d 622, 627 (Fla. 1976)), arrived at a verdict "within this range of values," *Kish v. McDonald's Corp.*, 564 So. 2d 1177, 1180 (Fla. 4th DCA 1990); *see also Onemata Corp.*, 2022 WL 18278477, at *3 (affirming a jury award of $5,000,000 in contract damages where "there was ample, competent evidence adduced at trial to support an award of *at least* the $5

11

million awarded by the jury"); *Batista v. Avant Assurance Inc.*, 2023 WL 7545064, at *6 (S.D. Fla. Nov. 1, 2023) (Torres, Mag. J.) ("[W]hen the jury's verdict comes in at *less* than what the Plaintiffs asked for, it is a hard case to make that the verdict is grossly excessive or beyond the pale."), *report and recommendation adopted*, 2023 WL 8518952 (S.D. Fla. Dec. 8, 2023) (Altonaga, C.J.).

We're therefore satisfied that "there is nothing in this record to support a holding that the damages returned were [more] than could have been returned by a jury acting upon the evidence before it[.]" *Allied Chemical Corp. v. Eubanks Indus., Inc.*, 155 So. 2d 740, 742 (Fla. 3d DCA 1963) (citing *Handel v. Rudnick*, 78 So.2d 709 (Fla. 1955)).[6] On the contrary, the testimony Horowitz offered about the Yacht's longstanding, structural defects (and the scope of the repairs they required), *see ante*, at 10 n.5, provided a sufficient basis for the jury to "determine[ ] with 'reasonable certainty' [the] Plaintiff's . . . damages without engaging in speculation or guesswork," *Smoliak v. Greyhound Lines, Inc.*, 2006 WL 8445233, at *3 (N.D. Fla. Oct. 13, 2006) (Smoak, J.) (first quoting *DeAlmeida v. Graham*, 524 So. 2d 666, 668 (Fla. 4th DCA 1987); and then citing *Loftin v. Wilson*, 67 So. 2d 185, 188 (Fla. 1953)). Recognizing that it is emphatically the province of the jury to *weigh* the trial evidence in calculating "the appropriate amount of damages," *Kerrivan*, 953 F.3d at 1206 (cleaned up); *see also Jefferson Realty of Fort Lauderdale, Inc. v. U.S. Rubber Co.*, 222 So. 2d 738, 742 (Fla. 1969) ("The jury is the sole judge of such factual issue and neither the trial judge nor an appellate court may substitute its judgment on such issue for that of the jury."), we decline to nullify their sound judgment here.

* * *

---

[6] In its Motion, Allied Marine points to Jury Question No. 3—"Do the damages awarded include or exclude the actual boat?" Jury Question and Answer Form ("Jury Q&A Form") [ECF No. 220] at 2— as evidence "that Horowitz's lack of evidentiary support of damages caused the jury to consider otherwise irrelevant information," Def.'s Amnd. Mot. at 21. But we *explicitly* instructed the jury that "possession of the physical boat is irrelevant to [their] calculation of damages," Jury Q&A Form at 3, and we have no reason to believe the jury ignored this (or any other) instruction, *see Brink v. Direct Gen. Ins. Co.*, 38 F.4th 917, 924 (11th Cir. 2022) ("[I]n this Circuit a 'jury is presumed to follow jury instructions.'" (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983))).

As Publius told us long ago, there remains an "inseparable connection between the existence of liberty, and the trial by jury in civil cases," which represents "the very palladium of free government." THE FEDERALIST No. 83 (Alexander Hamilton). After four days of attentively considering testimony and more than a day of deliberations,[7] the jury returned a verdict within the "reasonable range of damages" based on the evidence the parties presented at trial. FLA. STAT. § 768.74(5). And we may not substitute our judgment (or Allied Marine's) for theirs. *See Guy. Tel. & Tel. Co. v. Melbourne Int'l Comm'ns, Ltd.*, 329 F.3d 1241, 1247 (11th Cir. 2003) ("In reviewing the jury's verdict, it is not our province to substitute our judgment as to the correct measure of damages; instead, we must determine whether the jury's calculation was reasonable in light of the trial evidence."). The Defendant's Amended Motion for Remittitur or New Trial is **DENIED**.

## II.    The Parties' Cross-Motions to Tax Costs

Having determined that the jury's verdict should stand, we'll now take up the parties' Cross-Motions to Tax Costs. This analysis will proceed in two steps. *First*, we must decide whether either party is a "prevailing party" entitled to costs. FED. R. CIV. P. 54(d)(1). *Second*, we must calculate "how much, if any, costs should be awarded" to that party. *SMS Audio, LLC v. Belson*, 2017 WL 11631389, at *2 (S.D. Fla. Aug. 4, 2017) (Middlebrooks, J.) (citing *Head v. Medford*, 62 F.3d 351, 355 (11th Cir. 1995)).

### a.    Determining Prevailing-Party Status

Generally, "the litigant in whose favor judgment is rendered is the prevailing party for purposes of [R]ule 54(d)." *Head*, 62 F.3d at 354. Where, as here, the jury returned a mixed verdict, *see* Final Judgment ¶ 1 ("[On Count VI], judgment shall be entered against the Defendant and in favor

---

[7] *See* Apr. 29 Trial Tr. [ECF No. 241] at 1269:14–1270:3 ("THE COURT: . . . [W]e've never had a jury like you. . . . I kept looking over at you guys, and everybody's taking notes, paying close attention, nodding when I give you instructions, clearly understanding everything that's going on.").

of the Plaintiff[.]"); *id.* ¶ 2 ("[On Counts I and IV], judgment shall be entered against the Plaintiff and in favor of the Defendant[.]"), we ask whether the plaintiff has "prevailed on a significant issue in the litigation and [has] obtained some of the relief [it] sought," *Tex. State Teachers Ass'n*, 489 U.S. at 793. As the Eleventh Circuit has explained:

> [t]o be a prevailing party [a] party need not prevail on all issues to justify a full award of costs, however. . . . A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims. . . . Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced.

*Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1321 (11th Cir. 2001) (quoting *Head*, 62 F.3d at 354).

By this standard, Horowitz is the prevailing party here. Armed with a judgment finding Allied Marine "liable for breach of the implied warranty of merchantability (Count VI)," and awarding him "$546,055.28 in damages," Final Judgment ¶ 1, Horowitz "obtained relief on[ ] at least some of[ ] [his] claims," *Walter Int'l Prods., Inc. v. Salinas*, 2010 WL 2976919, at *3 (S.D. Fla. July 19, 2010) (Seitz, J.); *see also Tex. State Teachers Ass'n*, 489 U.S. at 782 ("[T]to be considered a prevailing party . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."). As such, Horowitz's "achievement of some of the benefits sought in bringing his lawsuit makes [him] a prevailing party." *Dorvil v. Nationstar Mortg. LLC*, 2020 WL 8408456, at *3 (S.D. Fla. Nov. 24, 2020) (Otazo-Reyes, Mag. J.) (citing *Pickett v. Iowa Beef Processors*, 149 F. App'x 831, 832 (11th Cir. 2005)), *report and recommendation adopted*, 2021 WL 355051 (S.D. Fla. Feb. 2, 2021) (Martinez, J.).

Allied Marine, on the other hand, is (necessarily) *not* a prevailing party. *See SMS Audio*, 2017 WL 11631389, at *2 ("Even though Plaintiffs succeeded on some claims and Defendants on others, '[t]he plain language of Rule 54 unambiguously limits the number of prevailing parties in a given case to one.'" (quoting *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010))). "A defendant is a prevailing party if the plaintiff achieves *none* of the benefits sought in bringing its lawsuit." *Pickett*, 149

F. App'x at 832 (emphasis added) (citing 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 54.171[3][c][iv], at 54–285)). That's simply not the case here. Although Allied Marine successfully defended—and received favorable judgment as to—*some* of Horowitz's claims, that's not enough to make it the prevailing party. *See Walter Int'l*, 2010 WL 2976919, at *3 (refusing to find that the defendants were "the prevailing party," even though they "did successfully defend against two claims of tortious interference," because the plaintiffs "obtained relief on[ ] at least some of[ ] their claims").

Resisting this conclusion, Allied Marine advances four arguments—all unpersuasive.

*One*, Allied Marine claims that, because "the jury awarded [Horowitz] far less than the purchase price and did not agree that Horowitz was entitled to a full refund[,] . . . Horowitz did not prevail on the substantial issues in this case." Defendant's Response to Pl.'s Costs Mot. ("Def.'s Costs Resp.") [ECF No. 249] at 3 (cleaned up). But that's irrelevant. *See, e.g., Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ("A judgment for damages in *any* amount . . . modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." (emphasis added)); *Lipscher*, 266 F.3d at 1321 ("As the district court correctly noted, the jury returned a verdict in favor of [the plaintiff] as to liability, and while the damage award was nominal, the district court entered final judgment in [the plaintiff's] favor as to damages. The district court did not err in finding [the plaintiff] to be the prevailing party for Rule 54 purposes."). Horowitz is the prevailing party, even though he didn't receive the full amount of the damages he requested, because he "obtained a jury verdict of liability and damages and a final judgment of damages, albeit reduced from the [requested] award, in his favor." *Dorvil*, 2020 WL 8408456, at *3.

*Two*, Allied Marine thinks it's the prevailing party because it "won two out of three counts and prevailed on the *majority* of substantive issues brought before the jury." Def.'s Costs Reply at 2 (emphasis added). This argument—that costs should go to the party who "wins" more claims—is creative, since both of the "mixed verdict cases cited by Horowitz" happen to be cases in which "the

party that won on the majority of substantive issues was designated as the prevailing party." *Ibid.*; *see also* Plaintiff's Response to Def.'s Costs Mot. ("Pl.'s Costs Resp.") [ECF No. 250] at 3 ("In *Dorvil*, 'Plaintiff obtained a jury verdict and Final Judgment in his favor on two [of three] counts.'" (quoting *Dorvil*, 2020 WL 8408456, at *3)); *id.* at 4 ("In *Walter Int'l Prods. v. Salinas*, after the jury returned a verdict in favor of the Plaintiff, the Plaintiff prevailed on six (6) out of eight (8) claims."). It's also wrong.

Our Rule 54 analysis doesn't turn on a simple accounting of which party won more counts at trial. *See, e.g.*, *Jeffrey O. v. City of Boca Raton*, 2007 WL 9702659, at *2 (S.D. Fla. Aug. 21, 2017) (Middlebrooks, J.) ("[W]hile case law does use the term significant to describe the type of issue or relief that entitles one to prevailing party status, there is no indication that the relief must be significant when compared to what was sought. These cases use the term *some*, not most, or a majority of." (emphasis added) (first citing *Tex. State Teachers Ass'n*, 489 U.S. at 791 (1989); and then citing *Mills ex rel. Mills v. Freeman*, 118 F.3d 727, 733 (11th Cir. 1997))). Instead, our Circuit has been clear that a plaintiff need only obtain "some relief" to be the prevailing party. *Lipscher*, 266 F.3d at 1321. Horowitz has done that here.

*Three*, Allied Marine (citing no law) maintains that it's the "prevailing party because the Limited Warranty was the central document in this case and the jury found that Allied did not breach this express agreement." Def.'s Costs Reply at 3 (cleaned up). Even if that were true, "the Supreme Court rejected the 'central issue' test in [*Texas State Teachers Ass'n v.*] *Garland*," and the Eleventh Circuit has *explicitly* directed district courts to "no longer use th[at] test in their prevailing party determinations."

*Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1382 n.7 (11th Cir. 2022) (citing *Tex. State Teachers Ass'n*, 489 U.S. at 790). That's really the end of that.[8]

*Four*, Allied Marine retreats from its position that it's the prevailing party and argues, "[i]n the alternative," that "neither party is a prevailing party"—a determination that would allow us to order that "each party . . . bear its own taxable costs." Def.'s Costs Reply at 4–5. But, as we've made clear, Horowitz *is* the prevailing party under the Eleventh Circuit's "well-established" "definition of a 'prevailing party,'" since it "obtain[ed] judgment on [at least some] of the claims advanced." *Lipscher*, 266 F.3d at 1321 (quoting *Head*, 62 F.3d at 354). And Allied Marine offers no other "basis for overcoming the strong presumption of awarding costs to the prevailing party under Rule[ ] 54(d)." *Dovril*, 2020 WL 8408456, at *3 (first citing *Trident Int'l, Ltd. v. Imperial Majesty Cruise Line, LLC*, 2011 WL 845875, at *2 (S.D. Fla. Jan. 19, 2011) (Snow, Mag. J.), *report and recommendation adopted*, 2011 WL 845849 (S.D. Fla. Mar. 8, 2011) (Dimitrouleas, J.); then citing *Lipscher*, 266 F.3d at 1321; and then citing *Pickett*, 149 F. App'x at 832).

Because Horowitz is the prevailing party, we **DENY** Allied Marine's Motion to Tax Costs.

### b.  Calculating Horowitz's Costs

Since Horowitz is the prevailing party, we *may* award him the following costs under 28 U.S.C. § 1920:

1. Fees of the clerk and marshal;
2. Fees for printed and electronically recorded transcripts necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
5. Docket fees under section 1923 of [Title 28];

---

[8] For this same reason, we also reject Allied Marine's related argument that Horowitz wasn't the prevailing party because "Allied was ultimately vindicated in its performance of the Limited Warranty, which was a significant and central issue in the case." Def.'s Cost Reply at 3.

6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of [Title 28].

28 U.S.C. § 1920 (cleaned up); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) ("[Sec. 1920] enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)."). In his Motion, Horowitz asks that Allied Marine pay his "fees of the clerk and marshal" ($402.00), *see* Pl.'s Costs Mot. at 3 (cleaned up), "costs associated with the service of the summons and subpoenas related to witnesses for deposition and trial" ($1,128.11), *ibid.*, "costs associated with printed or electronically recorded transcripts" ($5,073.20), *id.* at 4, and "costs associated with [ ] exemplification and . . . of making copies" ($2,950.24), *ibid.*, totaling $9,553.55.

Allied Marine doesn't object "to the filing fee in the amount of $402.00 as a recoverable cost," Def.'s Costs Resp. at 4, and Horowitz has since agreed to reduce his requested reimbursement for transcripts to $5,043.60, which Allied Marine "believes [is] the proper calculation" of this cost, *id.* at 7; *see* Pl.'s Costs Reply at 6 ("In the interest [of] simplifying matters for the Court, Plaintiff will agree to reduce the amount of costs sought for hearing and deposition transcripts in this matter to the amount agreed to by Defendant, i.e., $5,043.60."). We therefore **GRANT** Horowitz's Motion to Tax as to these *unopposed* costs.

That leaves only Horowitz's requests for service costs and copying costs, both of which Allied Marine opposes. *See* Def.'s Costs Resp. at 9 ("Allied objects to all costs except: Filing fee - $402[,] Service of two subpoenas - $130[, and] Deposition and hearing transcripts - $5,043.60[.]" (cleaned up)). We'll take each in turn.

Allied Marine raises two objections to Horowitz's request for $1,128.11 in costs related to serving the summons and subpoenas.[9] *First*, Allied Marine contends that it shouldn't have to pay the

---

[9] Like Allied Marine, we're not sure how Horowitz arrived at this amount for service fees. *See* Def.'s Costs Mot. at 4 ("It is not clear how such amount was calculated, as even the calculation of all invoices

"$144.36 in FedEx charges" and the Florida Secretary of State's "$8.75" fee stemming from Horowitz's failed attempt to effectuate substitute service on Ferretti S.p.A. *Id.* at 5. We agree. Horowitz voluntarily dismissed his claims against Ferretti S.p.A. on May 3, 2021. Notice of Voluntary Dismissal [ECF No. 22]. And the "cost of the service of process upon dismissed defendants is not recoverable." *Seacoast Nat'l Bank v. M/Y Viaggio*, 2023 WL 6930685, at *6 (S.D. Fla. Oct. 2, 2023) (Strauss, Mag. J.) (first citing *Santos v. Taste 1 Grp., LLC*, 2015 WL 13792370, at *3 (M.D. Fla. Nov. 16, 2015) (Toomey, Mag. J.), *vacated as moot*, Endorsed Order [ECF No. 54], No. 14-cv-00383 (M.D. Fla. Nov. 20, 2015) (Howard, J.); and then citing *Ramos v. Davis & Geck, Inc.*, 968 F. Supp. 765, 781 (D.P.R. 1997)), *report and recommendation adopted*, 2023 WL 6908985 (S.D. Fla. Oct. 19, 2023) (Ruiz, J.); *see also Wales-Walden v. AK "N" Eli, LLC*, 2018 WL 6807343, at *3 (S.D. Fla. Oct. 12, 2018) (O'Sullivan, Mag. J.) ("[T]he plaintiff is not entitled to recover for the costs of service . . . for dismissed defendants[.]"), *report and recommendation adopted*, 2018 WL 6807316 (S.D. Fla. Oct. 29, 2018) (Ungaro, J.). We therefore **DENY** Horowitz's Motion as it relates to the costs of serving Ferretti S.p.A.

*Second*, Allied Marine objects to seven of Horowitz's nine requests for costs relating to the service of subpoenas on witnesses or for documents. Under 28 U.S.C § 1920, a prevailing party may recover the costs for "each subpoena served on a witness the Plaintiff could have reasonably believed was at least partially necessary to the litigation." *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000) (Rodriguez, J.) (citing *U.S. E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 621–24 (11th Cir. 2000)). Even so, "[t]he expense of using a private process server is compensable only to the extent authorized in 28 U.S.C. § 1921"—*viz.*, "the prevailing party is only entitled to those fees that would

---

attached as Exhibit C to Horowitz's Motion does not total such amount."). We'll therefore recalculate the proper total based on the invoices Horowitz has submitted in support of his Motion. *See* Ex. C to Pl.'s Costs Mot. [ECF No. 243] at 13–26.

have been incurred had the United States Marshal's Service effectuated the service." *Espinoza v. Target Corp.*, 2021 3550780, at *5 (S.D. Fla. Aug. 11, 2021) (Rosenberg, J.) (cleaned up).

Allied Marine first objects to Horowitz's request that it cover the fees associated with serving (1) Guy Gauvin, an anticipated witness who was neither "called by either party to trial" nor effectively served at all, Def.'s Costs Resp. at 6 (citing Ex. C to Pl.'s Costs Mot. [ECF No. 243] at 21), and (2) Michael Monahan, "a defense rebuttal expert witness," *id.* at 5–6 (citing Ex. C to Pl.'s Costs Mot. at 18). As to Gauvin, the fact that Horowitz abandoned his attempt to properly serve him suggests that this witness wasn't even "partially necessary to the litigation[.]" *Davis v. Sailormen, Inc.*, 2007 WL 1752465, at *3 (M.D. Fla. June 15, 2007) (Conway, J.) (cleaned up); *see also Houston Specialty Ins. Co. v. Fenstersheib*, 2023 WL 4974071, at *3 (S.D. Fla. July 28, 2023) (Hunt, Mag. J.) ("Plaintiff should not be entitled to recover for . . . the [subpoena] to Regency that was invoiced but not served."), *report and recommendation adopted*, 2023 WL 9228331 (S.D. Fla. Aug. 24, 2023) (Altman, J.). We also won't make Allied Marine pay the costs of serving Monahan, who was never called to testify and who wasn't even listed on Horowitz's list of potential trial witnesses. *See generally* Plaintiff's Trial Witness List [ECF No. 170-1]. As it was far too late for Horowitz to depose Monahan, *see* Ex. C to Pl.'s Costs Mot. at 18 ("Served: 4/2/2024"); Scheduling Order [ECF No. 20] at 2 ("[By] November 30, 2021[,] [a]ll discovery, including expert discovery, shall be completed." (emphasis omitted))—and because Horowitz couldn't have called Monahan to testify at trial even if he'd wanted to, *see* S.D. FLA. L.R. 16.1(e) (requiring the filing of "[e]ach party's numbered list of trial witnesses" "no later than seven (7) days prior to the pretrial conference")—it was completely unnecessary for Horowitz to order that subpoena. We therefore **DENY** Horowitz's Motion as to those costs.

Next, Allied Marine challenges Horowitz's request for the costs of serving five subpoenas *duces tecum*. According to Allied Marine, "[t]he subpoenas sought only documents and Horowitz provides no explanation as to how these subpoenas were necessary for the case." Def.'s Costs Resp. at 6 (citing

*Cont'l 332 Fund v. Hilz*, 2020 WL 6595061, at *3 (M.D. Fla. Oct. 23, 2020) (McCoy, Mag. J.), *report and recommendation adopted*, 2020 WL 6591192 (M.D. Fla. Nov. 10, 2020) (Chappell, J.)). But that wholly misstates the parties' relative burdens at this stage. When the Plaintiff is the prevailing party, it's the "Defendant's burden to show that it was *unnecessary* to subpoena these [documents] for trial." *Royal Bahamian Ass'n v. QBE Ins. Co.*, 2011 WL 13220459, at *3 (S.D. Fla. May 18, 2011) (Goodman, Mag. J.) (emphasis added), *report and recommendation adopted*, 2011 WL 13220497 (S.D. Fla. June 20, 2011) (Moreno, C.J.); *see also Lomelo*, 929 F.2d at 639 (noting that FED. R. CIV P. 54(d) "creates a presumption in favor of awarding costs to the prevailing party which [the non-prevailing party] must overcome" (citing *Coyne–Delany Co. v. Cap. Dev. Bd. of Ill.*, 717 F.2d 385 (7th Cir. 1983))). Since Allied Marine doesn't do that, we'll allow Horowitz to recover these costs.

In total, then, Horowitz should be reimbursed for seven subpoenas (*i.e.*, the five subpoenas *duces tecum* and the two to which Allied Marine doesn't object). *See* Def.'s Costs Resp. at 7 (conceding that Horowitz is entitled to costs for serving David Montoya and Nicola Rossi). Because "the documentation submitted by [Horowitz] does not provide any information as to the time expended to effectuate service by the private process server," *Berlinger v. Wells Fargo*, 2016 WL 4920079, at *3 (M.D. Fla. Sept. 15, 2016) (Steele, J.), we'll limit the cost of service to $65 per subpoena *at most*, *see Race v. Goodge*, 2022 WL 20325961, at *2 (M.D. Fla. Jan. 12, 2022) (Barksdale, Mag. J.) ("When a party requests more than $65 without providing evidence of how long service took or whether travel costs or out-of-pocket expenses were incurred, courts have reduced the award to $65, the minimum charged by the U.S. Marshal's Service." (cleaned up)), *report and recommendation adopted*, 2023 WL 2930889 (M.D. Fla. Feb. 3, 2023) (Davis, J.). And we won't allow Horowitz to recover twice for multiple attempts at service (or for "rush" service). *See, e.g., Cadle v. Geico Gen. Ins. Co.*, 2015 WL 4352048, at *3 (M.D. Fla. Mar. 9, 2015) (Kelly, Mag. J.) ("[I]t is imperative that the party seeking costs for multiple service attempts provide evidence justifying the need for multiple service attempts."), *report and recommendation*

*adopted*, 2015 WL 4352048 (M.D. Fla. July 14, 2015) (Presnell, J.); *Cardona v. Mason & Dixon Lines, Inc.*, 2018 WL 369160, at *4 (S.D. Fla. Jan. 10, 2018) (O'Sullivan, Mag. J.) ("The Court finds that there were no extraordinary circumstances in this matter requiring expedited service. As such, rush service fees will not be awarded."). After our careful review of the invoices presented for those subpoenas, *see* Ex. C to Pl.'s Costs Mot. at 19–20, 22–26, we conclude that Horowitz is entitled to $355.00 in service-related costs.[10]

  Allied Marine also contests Horowitz's request for $2,950.24 in copying costs. *See* Def.'s Costs Resp. at 8 ("Allied has several objections to this cost."). Federal law allows the prevailing party to recover "the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920(4). To receive reimbursement for copies it "reasonably believed [were] necessary" to the litigation, *W & O*, 213 F.3d at 623, the prevailing party "must come forward with 'evidence showing the nature of the documents copied and . . . how they were used,'" *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1341 (M.D. Fla. 2002) (Wilson, Mag. J.) (quoting *Fulton Fed. Savings & Loan Ass'n of Atlanta v. Am. Ins. Co.*, 143 F.R.D. 292, 300 (N.D. Ga. 1991) (Forrester, J.)); *see also Oliva v. NBTY, Inc.*, 2012 WL 12849960, at *8 (S.D. Fla. Feb. 2, 2012) (Snow, Mag. J.) ("[The] burden of establishing entitlement to copying costs lies with the prevailing party[.]" (cleaned up)), *report and recommendation adopted*, 2012 WL 12849958 (Dimitrouleas, J.).

  According to Allied Marine, "the invoice presented by Horowitz is insufficient . . . to show that the amount requested truly represents taxable costs." Def.'s Costs Resp. at 8. We agree. Although an invoice needn't make "an accounting for each photocopy, . . . the prevailing party must make some attempt to differentiate recoverable copying costs from non-recoverable general photocopying

---

[10] That is, $65 for the David Montoya subpoena, *see* Ex. C to Pl.'s Costs Mot. at 19; $65 for the Nicola Rossi subpoena, *see id.* at 20; $40 for the New Level Marine subpoena, *see id.* at 22; $40 for the NN Marine subpoena, *see id.* at 23; $40 for the Furnace Marine subpoena, *see id.* at 24; $65 for the Sea-Coast Marine subpoena, *see id.* at 25; and $40 for the MVAC subpoena, *see id.* at 26.

expenses." *Oliva*, 2012 WL 12849960, at *8 (citing *Scelta*, 203 F. Supp. 2d at 1340). Horowitz doesn't do that. Instead, his invoice only differentiates between charges for "Color Prints" and "Black and White Copies[.]" Ex. E to Pl.'s Costs Mot. [ECF No. 243] at 39.

In his Reply, Horowitz explains that these copies were of "trial exhibits," which he "thought . . . were necessary for the case." Pl.'s Costs Reply at 6. But a party's "unsubstantiated claims that such documents were necessary is insufficient to permit recovery." *Corsair Asset Mgmt., Inc. v. Mosdovitz*, 142 F.R.D. 347, 352 (N.D. Ga. 1992) (citing *Fulton*, 143 F.R.D. at 300); *see also Scelta*, 203 F. Supp. 2d at 1340 (denying copying costs where the parties' "substantiation and description of their photocopying expenses consist[ed] of each firm's billing records which merely state[d] 'copies' or 'photocopies'"). Because Horowitz provides no "*evidence* showing the nature of the documents copied," *Fulton*, 143 F.R.D. at 300 (emphasis added), we have "no basis for determining which copying costs [are] compensable," *Oliva*, 2012 WL 12849960, at *8 (first citing *Scelta*, 203 F. Supp. 2d at 1340–41; and then citing *Aranda v. Jewish Cmty. Servs. of S. Fla., Inc.*, 2007 WL 707384 (S.D. Fla. March 5, 2007) (McAliley, Mag. J.)); *see also Scelta*, 203 F. Supp. 2d at 1340–41 ("[S]ince the defendants have not described the photocopying costs sufficiently to permit a determination of which photocopies were necessarily obtained for use in this case, reimbursement for photocopying costs is rejected in its entirety." (cleaned up)). We therefore **DENY** Horowitz's request for copy-related costs.

Taken together, then, Horowitz is entitled to recover, under Rule 54(d)(1) and 28 U.S.C. § 1920, $402.00 in clerk fees, $5,043.60 in transcript fees, and $355.00 in service fees—for a total award of $5,800.60.

* * *

Accordingly, we hereby **ORDER and ADJUDGE** as follows:

1. The Defendant's Amended Motion for Remittitur or New Trial [ECF No. 248] is **DENIED**.

2. The Plaintiff's Motion to Tax Costs [ECF No. 243] is **GRANTED in part** (insofar as the Plaintiff shall recover from the Defendant **$5,800.60**) and **DENIED in part** as to all other requested relief.

3. The Defendant's Motion to Tax Costs [ECF No. 247] is **DENIED**.

4. This case shall remain **CLOSED**.

   **DONE AND ORDERED** in the Southern District of Florida on July 3, 2024.

 

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record